**NASH et al. v. UNITED STATES.**

**No. 228.**

Circuit Court of Appeals, Second Circuit.

Jan. 4, 1932.

Siegel & Corn, of New York City (Isaac Siegel and Jacob Corn, both of New York City, of counsel), for Richard Nash.

Sylvester & Harris, of New York City (Charles L. Sylvester, of New York City, of counsel), for Philip de Stefano.

George Z. Medalie, U. S. Atty., and John A. Wilson, both of New York City (Livingston Hall, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The guilt of the defendants is so plain that only some serious blunder in the conduct of the trial should result in a reversal. To-day, under section 391 of title 28 of the U. S. Code (Jud. Code, § 269, 28 USCA § 391), we no longer assume that all errors are prejudicial, but regard the whole record with an eye to the substantial correctness of the result. Haywood v. U. S., 268 F. 795 (C. C. A. 6); Simpson v. U. S., 289 F. 188 (C. C. A. 9); Shuman v. U. S., 16 F.(2d) 457 (C. C. A. 5); Rice v. U. S., 35 F.(2d) 689, 694 (C. C. A. 2). The most plausible complaint here is as to the admission of Keane's written statement. He was one of the defendants, and added his confirmation to a declaration prepared immediately after his arrest, and signed by one, Lachenauer, a narcotic agent, and the chief witness for the prosecution. So far as this was Lachenauer's own, it was incompetent, for it did not conform with the conditions which alone make admissible an earlier declaration in corroboration of what a witness says upon the stand. It was allowed in evidence against Keane alone, and as his admission, under the recognized subterfuge of an instruction to the jury to confine its use to him. If we were to reframe the law of evidence and were still to preserve the hearsay rule, it might be better to keep out all such, for the practice, though well settled,

is an evasion, and evasions are discreditable. There is no reason why the prosecution, if it chooses to indict several defendants together, should not be confined to evidence admissible against all, and if real injustice were done, the result would be undesirable. In effect, however, the rule probably furthers, rather than impedes, the search for truth, and this perhaps excuses the device which satisfies form while it violates substance; that is, the recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else.

■ Nevertheless, the rules ought to be observed so far as they can, and such evidence should at least be confined to declarations professing to emanate from the defendant. In the case at bar this was not done, for the written statement admitted was in form Lachenauer's and read as his; Keane merely added a postscript that he subscribed to its truth. Thus the prosecution got whatever force there was in the fact that its chief witness had told the same story freshly as he was telling on the stand. The substance of what Keane said could have been divorced from this; it would have been possible so to couch it as to keep the promise as well to the sense as to the ear. But no damage was really done, for, while the defence was that the case had been fabricated, there was no reason to suspect that this had been done between the arrest and the trial, in which case alone a corroborative declaration of Lachenauer was prejudicial. Even though, for reasons we shall give in a moment, we pass upon this record with a jealous eye, the damage is too fanciful for serious consideration. The same is true of the defendants' proposals—as recited by Lachenauer and Keane—made after the bribe passed, to commit a similar crime in the future. Perhaps these cannot be defended as part of the inducement to Lachenauer to violate his duty, but it is inconceivable that they should have given greater credence to either witness; and if the jury believed them at all, the crime had been committed. It would have been otherwise, had the same testimony come from the mouths of other witnesses.

■ The judge's charge as to the character testimony was only that the jury should consider it along with the rest, remembering that a man with a good reputation might still commit crime; and this is challenged under the doctrine of Edgington v. U. S., 164 U. S. 361, 17 S. Ct. 72, 41 L. Ed. 467. That case held no more than that a judge should not confine the use of such testimony to the event that the jury was already in doubt. There was nothing revolutionary about that, since if once they reached that point, they ought to acquit in any event. Although it is perhaps doubtful whether a jury ever in fact concern themselves with such niceties, still it was true that, if understood at all, the charge in that case told them in substance to limit their use of the testimony improperly. But if the judge avoids that pitfall, as here he did, he has as many variants among which to choose as he has in general; evidence of good character is to be used like any other, once it gets before the jury, and the less they are told about the grounds for its admission, or what they shall do with it, the more likely they are to use it sensibly. The subject seems to gather mist which discussion serves only to thicken, and which we can scarcely hope to dissipate by anything further we can add.

■■ The declarations of Keane sworn to by Lachenauer were clearly competent. Enough appeared independently to show that he was acting in concert with the other two, and what he was reported to have said was in execution of their common plan. Nor was he an accomplice within the rule that required any caution to be given. He was himself on trial and there is no reason to suspect that his prosecution was a cover to procure his evidence; he was not sworn by the government, which was apparently trying in good faith to enmesh him with the rest. True, he tried to exculpate himself, and succeeded, but the fact that his testimony implicated them at the same time that it exonerated him, did not bring him within the supposed rule. That has grown up in those cases where a confederate appears for the prosecution, actuated by the hope that he will so get immunity. That is not the situation when, being himself on trial, he seeks to throw the guilt upon his fellows. His motive may be as great and his credibility as dubious, but the prosecution does not rest upon his testimony, and the judge need say nothing about his credibility, even if he must caution the jury against one who turns state's evidence, which we do not mean to imply.

■ The other points are too trivial to require discussion, and indeed we should scarcely have found it necessary to say what we have except for the sentences. The learned judge imposed the maximum for the crime of bribery, and added to that in sequence the maximum for the crime of conspiracy to bribe, thus almost doubling the utmost which Congress prescribed. While it is of course true that a conspiracy may be a graver crime than

the object to be attained, this case does not present a situation in which the two may fairly be regarded as justifying cumulative sentences, and, therefore, though the power existed, it seems to us here to have been plainly abused. We are not ourselves able to intervene, though if we could, we should not hesitate to do so; but we have several times in the past felt it to be within the proprieties to express our disapproval in similar cases, [Harrison v. U. S., 7 F.(2d) 259; Hartson v. U. S., 14 F.(2d) 561; Amendola v. U. S., 17 F.(2d) 529]; and we do so again.

Judgment affirmed.