(No. 29676.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FERNE BARBARO *et al.*, Plaintiffs in Error.

*Opinion filed November 20, 1946.*

H. E. SKINNER, of Marion, and SCERIAL THOMPSON, of Harrisburg, for plaintiffs in error.

GEORGE F. BARRETT, Attorney General, and LAN HANEY, State's Attorney, of Marion, (CHARLES D. WINTERS, of Marion, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendants, Ferne Barbaro and Preston Williams, were indicted in the circuit court of Williamson county for burglary and larceny. A jury found each of them guilty, and they were sentenced to imprisonment in the penitentiary for not less than one year or for life. Defendants prosecute this writ of error.

Seeking a reversal of the judgments, defendants make several contentions. Of these, the first is that the court should have granted Williams a separate trial. By his verified motion for severance he alleged that the defenses of the defendants and the evidence to be adduced in support of the separate and individual defenses were opposed and antagonistic, and that he, Williams, could not have a fair and impartial trial if his cause and defense were submitted to the same jury and at the same time as the opposed and antagonistic defense of his codefendant. He alleged further, that, upon the trial, the People would offer in evidence testimony against Ferne Barbaro consisting of oral statements, admissions and confessions by her in which he, Williams, was named and charged by her to be also guilty; that no one of these statements was made in his presence; that, although proper and material evidence against her, they were improper, inadmissible and prejudicial as against him; that the admissions related, reported, included and purported to contain implications of his guilt in such a manner, and were so connected, interrelated and interdependent that it would be impossible for the People to present the testimony properly as evidence against Ferne Barbaro and, at the same time, delete, eliminate or remove any mention or connection of and with him, Williams, without conveying to the jury improperly and prejudicially the import and substance of such evidence with respect to him. Concluding allegations include a denial of Williams's guilt. The motion for severance was overruled.

The evidence discloses that in the early morning of April 24, 1945, a restaurant known as the Gem Cafe, in the city of Marion, owned and operated by Alex Siatus and his three partners, was burglarized and the contents of the cash register rifled. Williams, at the time, was employed by the Gem Cafe as a cook and continued in the employment of the proprietors of the restaurant for two days after the burglary. According to Williams, he volun-

tarily stopped work because of illness. On September 24, 1945, defendants were indicted.

Out of the presence of the jury, O. T. Pickering, sheriff of Saline county, Robert Ramsey, the chief of police of Marion, and Herman May, fire chief of the city, testified on behalf of the People. Their testimony relates entirely to oral statements, admissions and confessions assertedly obtained from the defendants. From the testimony of these three witnesses, it appears that there were four separate conferences. The sheriff was confused concerning the order of the conferences but a consideration of all the evidence discloses that the first took place in the Saline county jail on April 29, 1945, between Pickering and Ferne Barbaro. The second occurred a little later the same day after the arrival from Marion of Ramsey and May. Those present at the second conference were Pickering, Ramsey, May and Mrs. Barbaro. The third was between Pickering and Williams alone, and the fourth, according to Pickering, was with Mrs. Barbaro and Williams together. With respect to the first conversation, Pickering testified that Ferne Barbaro admitted, in his presence alone, that she and Williams, familiarly referred to by all the witnesses as "Doodle," took the hinges off of the back door of the building, entered the restaurant, took between eighty and eighty-five dollars from the cash register and, also, carried away four or five fifths of whiskey. Pickering stated that he neither threatened nor mistreated Ferne Barbaro. Pickering added that he did not make any promise of any kind to Mrs. Barbaro. Ferne Barbaro testified that Pickering told her that if she would make a statement implicating Williams, he would release her; that he reproached her for associating with a colored man; that his conversation with her was vulgar in the extreme, and that she made the statements attributed to her because of his promises to "turn me loose." Referring to the second discussion with her, when Pickering, Ramsey and May were present, the

testimony of the two last named is to the same effect as Pickering's testimony relative to the first conversation. Objections were interposed on behalf of Williams, to the testimony of each of these witnesses on the ground that it might be determined from the testimony itself to be impossible to delete any reference to him without conveying to the jury improper and prejudicial testimony which would have an injurious effect upon its deliberations in the consideration of his case. The court admitted the testimony of these two witnesses relating to the confession of Ferne Barbaro only as to her, and directed that all parts relating to Williams be deleted. With respect to Pickering, the court stated that he had taken both confessions, that they were substantially the same, implicating themselves and each other. Ferne Barbaro testified that Ramsey and May stated, as had Pickering, if she would make a statement Williams perpetrated the crimes they would release her; that they likewise made obscene statements to her, and that the three men, Pickering, May and Ramsey, added that if she would not make a statement which would convict Williams, they would see to it that she "took a trip." She declared she only made the false statements 'because of. the promise made and the way the men treated her. · The third meeting testified to by Pickering was with Williams, alone. Pickering stated that he repeated to Williams the version given by Ferne Barbaro, and that Williams told him it was correct. According to the sheriff, their statements differed only in that each accused the other of suggesting the crimes. Williams testified that he denied participation in the burglary and larceny when Pickering accused him. Pickering testified that the next day, April 30, he talked to the two defendants together, and told them that their statements corroborated each other, with the exception that each was placing leadership on the other; that Ferne Barbaro then told Williams he was as much to blame as herself, and that Williams,

in turn, told her they were equally guilty. Williams admitted that he talked with Pickering in the presence of Ferne Barbaro, but declared the conversation did not concern the burglary of, and larceny from, the Gem Cafe but, instead, related to another matter. The trial judge thereupon announced that the two separate "confessions" where each talked to Pickering separately would be admitted only as to the defendant making the confession, and that the jury would be instructed the evidence was being admitted only as to the defendant making the statement, and that anything stated therein relating to the other defendant could not be considered as evidence against him or her. The court also ruled that the confession purporting to have been made when both were present would be admitted without instructions to the jury. Defendants excepted to this ruling, and Williams renewed his motion for a severance. The motion was again overruled.

Pickering's testimony before the jury was substantially the same as his testimony upon the preliminary motion. In his testimony, he referred to both defendants by name, despite repeated objections by defendant's counsel. The court twice admonished the jury that Pickering's testimony relative to the confessions was admissible only as to the defendant making the statement. Pickering denied reproaching Ferne Barbaro for her association with Williams. Pickering also contradicted Williams's testimony that he made no confession. Ramsey and May, testifying likewise in the presence of the jury, referred to both defendants. Upon the conclusion of Ramsey's testimony, the court stated that another defendant's name was mentioned upon cross-examination, and instructed the jury that this evidence relative to Ferne Barbaro's confession was admitted only as to her and that anything stated concerning the other defendant could not be considered as evidence against him. A like statement was made at the conclusion of May's testimony.

The defendants testified in their own behalf, each denying participation in the crimes charged against them. Ferne Barbaro denied talking to Pickering alone about the Gem Cafe case.

The court instructed the jury that any admissions or confessions made by one defendant were not to be considered as evidence against the other defendant, unless the confessions or admissions were made in the presence of the other defendant and, further, that a confession or admission made by a defendant is competent evidence against the defendant making the confession or admission.

The general rule is that where one or more defendants are jointly indicted for the commission of a crime, they are to be tried together. Whether a separate trial should be granted is a matter resting largely within the sound judicial discretion of the trial court. This discretion, of course, should not be exercised arbitrarily, capriciously, or in such a way as to work an injustice. (*People* v. *Serritello*, 385 Ill. 554; *People* v. *Patris*, 360 Ill. 596; *People* v. *Fisher*, 340 Ill. 216; *People* v. *Sweetin*, 325 Ill. 245.) The right to a severance must rest upon the ground that the defense to be offered by one defendant is so antagonistic to the defense to be offered by the other defendant that a severance is necessary to insure a fair trial. (*People* v. *Betson*, 362 Ill. 502.) Accordingly, it has been generally held that when a motion for a separate trial is made on the ground that a confession by a codefendant implicates the petitioner, a severance should be ordered unless the State's Attorney declares that the admissions or confessions will not be offered in evidence upon the trial, or unless there be eliminated from the confessions any reference to the codefendant applying for a severance. (*People* v. *Serritello*, 385 Ill. 554; *People* v. *Fisher*, 340 Ill. 216; *People* v. *Bolton*, 339 Ill. 225.) The reason for the rule is that it is practically impossible to remove by instruction the preju-

dicial effect of the confessions against the defendants implicated. *People* v. *Sweetin,* 325 Ill. 245.

Here, the admissions or confessions were made orally and references to the codefendant applying for a severance were not eliminated from the testimony. The court did direct the jury to not consider the statements and the confessions of Ferne Barbaro, so far as they had reference to Williams. There is no presumption of guilt arising from possession of the stolen property by either defendant, and there is no evidence connecting either with the commission of the crimes except from the admissions or confessions attributed to them by the three law-enforcing officers. One defendant explained her statements by testifying she was promised immunity, and the other denied categorically making them. The prosecution maintains, however, that there is other evidence than the codefendant's confession in each instance, namely, his or her own confession. The argument advanced is that the respective confessions made individually, and at one time, in the presence of each other, coincide in every material respect, implicating themselves individually and each other. The prosecution directs attention to Pickering's testimony to the effect that the two defendants at one time, in substance, stated that they were equally "involved." Both defendants denied making such statements. A concession that, at one of the four conferences, the defendants voluntarily confessed to substantially the same set of facts and circumstances surrounding the commission of the crimes for which they were jointly indicted does not aid the prosecution. The insuperable difficulty of separating such confessions from those made out of the presence of each other remains.

A fair summary of the evidence adduced leads to the conclusion that the defenses of the two defendants were, in fact, antagonistic to each other. Evidence adduced by the People tended to show that Ferne Barbaro implicated

Williams, but she, in turn, testified that she did so because
of promises made to her by the sheriff of Saline county,
the police chief and fire chief of Marion. The evidence
discloses, further, that only one of the three last mentioned
talked with Williams, and he, Pickering, said that Williams
admitted participation in the crimes at the suggestion of
his codefendant. This, Williams denied. We observe,
further, that although the two officers from Marion visited
Ferne Barbaro while incarcerated in the county jail of
Saline county and, together with Pickering, discussed with
Ferne Barbaro the commission of the crimes charged against
her, they did not, for reasons best known to themselves,
confer with Williams. Their failure so to do tends to
corroborate the testimony of Mrs. Barbaro that promises
were made to her, and that such statements as she made
to Pickering, Ramsey and May were made in reliance upon
the immunity promised. Under the circumstances present,
with four separate conversations or discussions in evidence,
one between Pickering and Mrs. Barbaro, alone, another
between Pickering and Williams, alone, another between
Pickering, on the one hand, and the two defendants, on the
other, and the fourth where the three officers were present
with Ferne Barbaro, alone, it would have been almost
humanly impossible for the jurors to have been able to
eradicate from their minds testimony referring to either
of the defendants which they were properly directed to
refrain from considering.

There is no substantial evidence in the record, apart
from the confessions, connecting either defendant with the
crimes. Eliminating the statements or confessions of his
codefendant, the only evidence tending to prove Williams
guilty of the crimes charged is the testimony of Pickering.
Mrs. Barbaro's testimony that she made the statements
attributed to her because of the promise of immunity was
certainly antagonistic to Williams. The court, it is true,
instructed the jury to disregard the testimony as to the ad-

missions of Ferne Barbaro made out of the presence of Williams, but the instruction could not cure the damage already done. Only theoretically did the instruction withdraw the evidence from the consideration of the jury. The prejudicial effect inevitably remained. Upon the record made, separation of the admissible evidence from the inadmissible becomes almost impossible,—even for a court of review.

For the reasons described, among others, Williams should have been granted a separate trial. The denial of his petition for a severance constituted an abuse of judicial discretion and, most assuredly, it was highly important in contributing to his conviction. Since he should have been tried separately, and since the generally unsatisfactory testimony concerning statements or confessions by Ferne Barbaro was flatly contradicted by her, and for the additional reason that the statements and confessions attributed to Williams named her, despite repeated objections to the use of her name, she, too, is entitled to a new trial.

The judgment of the circuit court of Williamson county is reversed and the cause is remanded for separate new trials for each defendant.

*Reversed and remanded, with directions.*