## BRUTON v. UNITED STATES.

No. 705. Argued March 11, 1968.—Decided May 20, 1968.

*Daniel P. Reardon, Jr.,* argued the cause and filed a brief for petitioner.

*Solicitor General Griswold* argued the cause for the United States. With him on the brief were *Assistant Attorney General Vinson, Robert S. Rifkind,* and *Beatrice Rosenberg.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

This case presents the question, last considered in *Delli Paoli* v. *United States,* 352 U. S. 232, whether the conviction of a defendant at a joint trial should be set aside

although the jury was instructed that a codefendant's confession inculpating the defendant had to be disregarded in determining his guilt or innocence.

A joint trial of petitioner and one Evans in the District Court for the Eastern District of Missouri resulted in the conviction of both by a jury on a federal charge of armed postal robbery, 18 U. S. C. § 2114. A postal inspector testified that Evans orally confessed to him that Evans and petitioner committed the armed robbery. The postal inspector obtained the oral confession, and another in which Evans admitted he had an accomplice whom he would not name, in the course of two interrogations of Evans at the city jail in St. Louis, Missouri, where Evans was held in custody on state criminal charges. Both petitioner and Evans appealed their convictions to the Court of Appeals for the Eighth Circuit. That court set aside Evans' conviction on the ground that his oral confessions to the postal inspector should not have been received in evidence against him. 375 F. 2d 355, 361.[1] However, the court, relying upon *Delli*

---

[1] The trial began June 20, 1966, one week after the decision in *Miranda* v. *Arizona*, 384 U. S. 436. The Court of Appeals held, 375 F. 2d, at 357, that *Miranda* and its companion cases were therefore applicable and controlling on the question of the admissibility in evidence of the postal inspector's testimony as to Evans' admissions. *Johnson* v. *New Jersey*, 384 U. S. 719. On April 8, 1966, St. Louis police officers, without giving Evans preliminary warnings of any kind and in the absence of counsel, obtained an oral confession during an interrogation at the city jail. The police informed the postal inspector, who interrogated Evans at the jail on April 11 and May 4, 1966; he obtained the oral confession expressly implicating petitioner on the latter date. On the merits, the Court of Appeals held, 375 F. 2d, at 361, that Evans' admissions to the postal inspector "were tainted and infected by the poison of the prior, concededly unconstitutional confession obtained by the local officer," and were therefore inadmissible under *Westover* v. *United States*, decided with *Miranda*, 384 U. S., at 494–497. On the retrial, Evans was acquitted.

*Paoli,* affirmed petitioner's conviction because the trial judge instructed the jury that although Evans' confession was competent evidence against Evans it was inadmissible hearsay against petitioner and therefore had to be disregarded in determining petitioner's guilt or innocence. 375 F. 2d, at 361–363.[2] We granted certiorari to reconsider *Delli Paoli.* 389 U. S. 818. The Solicitor General has since submitted a memorandum stating that "in the light of the record in this particular case and in the interests of justice, the judgment below should be reversed and the cause remanded for a new trial." The Solicitor General states that this disposition is urged in part because "[h]ere it has been determined that the confession was wrongly admitted against [Evans] and his conviction has been reversed, leading to a new trial at which he was

---

[2] At the close of the Government's direct case, the trial judge cautioned the jury that Evans' admission implicating petitioner "if used, can only be used against the defendant Evans. It is hearsay insofar as the defendant George William Bruton is concerned, and you are not to consider it in any respect to the defendant Bruton, because insofar as he is concerned it is hearsay."

The instructions to the jury included the following:

"A confession made outside of court by one defendant may not be considered as evidence against the other defendant, who was not present and in no way a party to the confession. Therefore, if you find that a confession was in fact voluntarily and intentionally made by the defendant Evans, you should consider it as evidence in the case against Evans, but you must not consider it, and should disregard it, in considering the evidence in the case against the defendant Bruton.

.        .        .        .        .

"It is your duty to give separate, personal consideration to the cause of each individual defendant. When you do so, you should analyze what the evidence shows with respect to that individual, leaving out of consideration entirely any evidence admitted solely against some other defendant. Each defendant is entitled to have his case determined from his own acts and statements and the other evidence in the case which may be applicable to him."

acquitted. To argue, in this situation, that [petitioner's] conviction should nevertheless stand may be to place too great a strain upon the [*Delli Paoli*] rule—at least, where, as here, the other evidence against [petitioner] is not strong." We have concluded, however, that *Delli Paoli* should be overruled. We hold that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. We therefore overrule *Delli Paoli* and reverse.

The basic premise of *Delli Paoli* was that it is "reasonably possible for the jury to follow" sufficiently clear instructions to disregard the confessor's extrajudicial statement that his codefendant participated with him in committing the crime. 352 U. S., at 239. If it were true that the jury disregarded the reference to the codefendant, no question would arise under the Confrontation Clause, because by hypothesis the case is treated as if the confessor made no statement inculpating the nonconfessor. But since *Delli Paoli* was decided this Court has effectively repudiated its basic premise. Before discussing this, we pause to observe that in *Pointer v. Texas,* 380 U. S. 400, we confirmed "that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him" secured by the Sixth Amendment, *id.,* at 404; "a major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him." *Id.,* at 406–407.

We applied *Pointer* in *Douglas v. Alabama,* 380 U. S. 415, in circumstances analogous to those in the present case. There two persons, Loyd and Douglas, accused

of assault with intent to murder, were tried separately. Loyd was tried first and found guilty. At Douglas' trial the State called Loyd as a witness against him. An appeal was pending from Loyd's conviction and Loyd invoked the privilege against self-incrimination and refused to answer any questions. The prosecution was permitted to treat Loyd as a hostile witness. Under the guise of refreshing Loyd's recollection the prosecutor questioned Loyd by asking him to confirm or deny statements read by the prosecutor from a document purported to be Loyd's confession. These statements inculpated Douglas in the crime. We held that Douglas' inability to cross-examine Loyd denied Douglas "the right of cross-examination secured by the Confrontation Clause." 380 U. S., at 419. We noted that "effective confrontation of Loyd was possible only if Loyd affirmed the statement as his. However, Loyd did not do so, but relied on his privilege to refuse to answer." *Id.*, at 420. The risk of prejudice in petitioner's case was even more serious than in *Douglas*. In *Douglas* we said, "Although the Solicitor's reading of Loyd's alleged statement, and Loyd's refusals to answer, were not technically testimony, the Solicitor's reading may well have been the equivalent in the jury's mind of testimony that Loyd in fact made the statement; and Loyd's reliance upon the privilege created a situation in which the jury might improperly infer both that the statement had been made and that it was true." *Id.*, at 419. Here Evans' oral confessions were in fact testified to, and were therefore actually in evidence. That testimony was legitimate evidence against Evans and to that extent was properly before the jury during its deliberations. Even greater, then, was the likelihood that the jury would believe Evans made the statements and that they were true— not just the self-incriminating portions but those implicating petitioner as well. Plainly, the introduction of

Evans' confession added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination, since Evans did not take the stand. Petitioner thus was denied his constitutional right of confrontation.

*Delli Paoli* assumed that this encroachment on the right to confrontation could be avoided by the instruction to the jury to disregard the inadmissible hearsay evidence.[3] But, as we have said, that assumption has since been effectively repudiated. True, the repudiation was not in the context of the admission of a confession inculpating a codefendant but in the context of a New York rule which submitted to the jury the question of the voluntariness of the confession itself. *Jackson* v. *Denno,* 378 U. S. 368. Nonetheless the message of *Jackson* for *Delli Paoli* was clear. We there held that a defendant is constitutionally entitled at least to have the trial judge first determine whether a confession was made volun-

---

[3] We emphasize that the hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence, see *Krulewitch* v. *United States,* 336 U. S. 440; *Fiswick* v. *United States,* 329 U. S. 211, the problem arising only because the statement was (but for the violation of *Westover, supra,* n. 1) admissible against the declarant Evans. See C. McCormick, Evidence § 239 (1954); 4 J. Wigmore, Evidence §§ 1048–1049 (3d ed. 1940); Morgan, Admissions as an Exception to the Hearsay Rule, 30 Yale L. J. 355 (1921). See generally Levie, Hearsay and Conspiracy, 52 Mich. L. Rev. 1159 (1954); Comment, Post-Conspiracy Admissions in Joint Prosecutions, 24 U. Chi. L. Rev. 710 (1957); Note, Criminal Conspiracy, 72 Harv. L. Rev. 920, 984–990 (1959). There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause. See *Pointer* v. *Texas,* 380 U. S. 400; *Barber* v. *Page,* 390 U. S. 719; *Mattox* v. *United States,* 156 U. S. 237. See generally McCormick, *supra,* § 224; 5 Wigmore, *supra,* §§ 1362–1365, 1397; Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv. L. Rev. 177 (1948).

tarily before submitting it to the jury for an assessment of its credibility. More specifically, we expressly rejected the proposition that a jury, when determining the confessor's guilt, could be relied on to ignore his confession of guilt should it find the confession involuntary. *Id.*, at 388–389. Significantly, we supported that conclusion in part by reliance upon the dissenting opinion of Mr. Justice Frankfurter for the four Justices who dissented in *Delli Paoli*. *Id.*, at 388, n. 15.

That dissent challenged the basic premise of *Delli Paoli* that a properly instructed jury would ignore the confessor's inculpation of the nonconfessor in determining the latter's guilt. "The fact of the matter is that too often such admonition against misuse is intrinsically ineffective in that the effect of such a nonadmissible declaration cannot be wiped from the brains of the jurors. The admonition therefore becomes a futile collocation of words and fails of its purpose as a legal protection to defendants against whom such a declaration should not tell." 352 U. S., at 247. The dissent went on to say, as quoted in the cited note in *Jackson,* "The government should not have the windfall of having the jury be influenced by evidence against a defendant which, as a matter of law, they should not consider but which they cannot put out of their minds." *Id.*, at 248. To the same effect, and also cited in the *Jackson* note, is the statement of Mr. Justice Jackson in his concurring opinion in *Krulewitch* v. *United States,* 336 U. S. 440, 453: "The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction. . . ." [4]

---

[4] Several cases since *Delli Paoli* have refused to consider an instruction as inevitably sufficient to avoid the setting aside of convictions. See, *e. g., United States ex rel. Floyd* v. *Wilkins,* 367 F. 2d 990; *United States* v. *Bozza,* 365 F. 2d 206; *Greenwell* v. *United States,* 119 U. S. App. D. C. 43, 336 F. 2d 962; *Jones*

The significance of *Jackson* for *Delli Paoli* was suggested by Chief Justice Traynor in *People* v. *Aranda,* 63 Cal. 2d 518, 528–529, 407 P. 2d 265, 271–272:

> "Although *Jackson* was directly concerned with obviating any risk that a jury might rely on an unconstitutionally obtained confession in determining the defendant's guilt, its logic extends to obviating the risks that the jury may rely on any inadmissible statements. If it is a denial of due process to rely on a jury's presumed ability to disregard an involuntary confession, it may also be a denial of due process to rely on a jury's presumed ability to disregard a codefendant's confession implicating another defendant when it is determining that defendant's guilt or innocence.
>
> "Indeed, the latter task may be an even more difficult one for the jury to perform than the former. Under the New York procedure, which *Jackson* held violated due process, the jury was only required to

---

v. *United States,* 119 U. S. App. D. C. 284, 342 F. 2d 863; *Barton* v. *United States,* 263 F. 2d 894; *United States ex rel. Hill* v. *Deegan,* 268 F. Supp. 580. In *Bozza* the Court of Appeals for the Second Circuit stated:

"It is impossible realistically to suppose that when the twelve good men and women had Jones' confession in the privacy of the jury room, not one yielded to the nigh irresistible temptation to fill in the blanks with the keys Kuhle had provided and ask himself the intelligent question to what extent Jones' statement supported Kuhle's testimony, or that if anyone did yield, his colleagues effectively persuaded him to dismiss the answers from his mind." 365 F. 2d, at 215.

State decisions which have rejected *Delli Paoli* include *People* v. *Aranda,* 63 Cal. 2d 518, 407 P. 2d 265; *State* v. *Young,* 46 N. J. 152, 215 A. 2d 352. See also *People* v. *Barbaro,* 395 Ill. 264, 69 N. E. 2d 692; *State* v. *Rosen,* 151 Ohio St. 339, 86 N. E. 2d 24.

It has been suggested that the limiting instruction actually compounds the jury's difficulty in disregarding the inadmissible hearsay. See Broeder, The University of Chicago Jury Project, 38 Neb. L. Rev. 744, 753–755 (1959).

disregard a confession it found to be involuntary. If it made such a finding, then the confession was presumably out of the case. In joint trials, however, when the admissible confession of one defendant inculpates another defendant, the confession is never deleted from the case and the jury is expected to perform the overwhelming task of considering it in determining the guilt or innocence of the declarant and then of ignoring it in determining the guilt or innocence of any codefendants of the declarant. A jury cannot 'segregate evidence into separate intellectual boxes.' . . . It cannot determine that a confession is true insofar as it admits that A has committed criminal acts with B and at the same time effectively ignore the inevitable conclusion that B has committed those same criminal acts with A." [5]

In addition to *Jackson,* our action in 1966 in amending Rule 14 of the Federal Rules of Criminal Procedure also evidences our repudiation of *Delli Paoli's* basic premise. Rule 14 authorizes a severance where it appears that a defendant might be prejudiced by a joint trial.[6] The Rule was amended in 1966 to provide expressly that "[i]n ruling on a motion by a defendant for severance the

---

[5] See *Pointer* v. *Texas, supra,* at 405: "Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law."

[6] Joinder of defendants is governed by Rules 8 (b) and 14 of the Federal Rules of Criminal Procedure. "The rules are designed to promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Daley* v. *United States,* 231 F. 2d 123, 125. An important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence. See, *e. g., Blumenthal* v. *United States,* 332 U. S. 539, 559–560.

court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial." The Advisory Committee on Rules said in explanation of the amendment:

> "A defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice. . . .
>
> "The purpose of the amendment is to provide a procedure whereby the issue of possible prejudice can be resolved on the motion for severance. . . ." [7]

Those who have defended reliance on the limiting instruction in this area have cited several reasons in support. Judge Learned Hand, a particularly severe critic of the proposition that juries could be counted on to disregard inadmissible hearsay,[8] wrote the opinion for the

---

[7] 34 F. R. D. 419. See generally Note, Joint and Single Trials Under Rules 8 and 14 of the Federal Rules of Criminal Procedure, 74 Yale L. J. 553 (1965).

[8] Judge Hand addressed the subject several times. The limiting instruction, he said, is a "recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else," *Nash* v. *United States*, 54 F. 2d 1006, 1007; "Nobody can indeed fail to doubt whether the caution is effective, or whether usually the practical result is not to let in hearsay," *United States* v. *Gottfried*, 165 F. 2d 360, 367; "it is indeed very hard to believe that a jury will, or for that matter can, in practice observe the admonition," *Delli Paoli* v. *United States*, 229 F. 2d 319, 321. Judge Hand referred to the instruction as a "placebo," medically defined as "a medicinal lie." Judge Jerome Frank suggested that its legal equivalent "is a kind of 'judicial lie': It undermines a

Second Circuit which affirmed Delli Paoli's conviction. 229 F. 2d 319. In Judge Hand's view the limiting instruction, although not really capable of preventing the jury from considering the prejudicial evidence, does as a matter of form provide a way around the exclusionary rules of evidence that is defensible because it "probably furthers, rather than impedes, the search for truth . . . ." *Nash* v. *United States*, 54 F. 2d 1006, 1007. Insofar as this implies the prosecution ought not to be denied the benefit of the confession to prove the confessor's guilt,[9] however, it overlooks alternative ways of achieving that benefit without at the same time infringing the noncon-

---

moral relationship between the courts, the jurors, and the public; like any other judicial deception, it damages the decent judicial administration of justice." *United States* v. *Grunewald*, 233 F. 2d 556, 574. See also 8 Wigmore, *supra*, n. 3, § 2272, at 416.

Compare E. Morgan, Some Problems of Proof Under the Anglo-American System of Litigation 105 (1956), who suggests that the use of limiting instructions fosters an inconsistent attitude toward juries by "treating them at times as a group of low-grade morons and at other times as men endowed with a superhuman ability to control their emotions and intellects." See also *Shepard* v. *United States*, 290 U. S. 96, 104; Meltzer, Involuntary Confessions: The Allocation of Responsibility Between Judge and Jury, 21 U. Chi. L. Rev. 317, 326 (1954).

[9] In this case, however, Evans' conviction was reversed on the ground that his confessions were inadmissible in evidence even against him, and on his retrial he was acquitted. In *People* v. *Aranda, supra*, 63 Cal. 2d, at 526, 407 P. 2d, at 270, it was said: "When, however, the confession implicating both defendants is not admissible at all, there is no longer room for compromise. The risk of prejudicing the nonconfessing defendant can no longer be justified by the need for introducing the confession against the one who made it. Accordingly, we have held that the erroneous admission into evidence of a confession implicating both defendants is not necessarily cured by an instruction that it is to be considered only against the declarant." See also *Jones* v. *United States* and *Greenwell* v. *United States*, both *supra*, n. 4.

fessor's right of confrontation.[10]    Where viable alternatives do exist, it is deceptive to rely on the pursuit of truth to defend a clearly harmful practice.

Another reason cited in defense of *Delli Paoli* is the justification for joint trials in general, the argument being that the benefits of joint proceedings should not have to be sacrificed by requiring separate trials in order to use the confession against the declarant.    Joint trials do conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.    But the answer to this argument was cogently stated by Judge Lehman of the New York Court of Appeals, dissenting in *People* v. *Fisher,* 249 N. Y. 419, 432, 164 N. E. 336, 341:

> "We still adhere to the rule that an accused is entitled to confrontation of the witnesses against him and the right to cross-examine them . . . .    We destroy the age-old rule which in the past has been regarded as a fundamental principle of our juris-

---

[10] Some courts have required deletion of references to codefendants where practicable. See, *e. g., Oliver* v. *United States,* 335 F. 2d 724; *People* v. *Vitagliano,* 15 N. Y. 2d 360, 206 N. E. 2d 864; *People* v. *La Belle,* 18 N. Y. 2d 405, 222 N. E. 2d 727. For criticisms suggesting that deletions (redaction) from the confession are ineffective, see, *e. g.,* Note, 72 Harv. L. Rev. 920, 990 (1959); Comment, 24 U. Chi. L. Rev. 710, 713 (1957); Note, 74 Yale L. J. 553, 564 (1965).

In this case Evans' confessions were offered in evidence through the oral testimony of the postal inspector. It has been said: "Where the confession is offered in evidence by means of oral testimony, redaction is patently impractical. To expect a witness to relate *X*'s confession without including any of its references to *Y* is to ignore human frailty. Again, it is unlikely that an intentional or accidental slip by the witness could be remedied by instructions to disregard." Note, 3 Col. J. of Law & Soc. Prob. 80, 88 (1967).

Some courts have promulgated rules governing the use of the confessions. See n. 4, *supra.* See also rules suggested by Judge Frank, dissenting in *Delli Paoli* v. *United States,* 229 F. 2d 319, 324.

prudence by a legalistic formula, required of the judge, that the jury may not consider any admissions against any party who did not join in them. We secure greater speed, economy and convenience in the administration of the law at the price of fundamental principles of constitutional liberty. That price is too high."

Finally, the reason advanced by the majority in *Delli Paoli* was to tie the result to maintenance of the jury system. "Unless we proceed on the basis that the jury will follow the court's instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them, the jury system makes little sense." 352 U. S., at 242. We agree that there are many circumstances in which this reliance is justified. Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. "A defendant is entitled to a fair trial but not a perfect one." *Lutwak* v. *United States,* 344 U. S. 604, 619; see *Hopt* v. *Utah,* 120 U. S. 430, 438; cf. Fed. Rule Crim. Proc. 52 (a). It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless, as was recognized in *Jackson* v. *Denno, supra,* there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Compare *Hopt* v. *Utah, supra; Throckmorton* v. *Holt,* 180 U. S. 552, 567; *Mora* v. *United States,* 190 F. 2d 749; *Holt* v. *United States,* 94 F. 2d 90. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant,

who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others.[11] The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.[12] *Pointer* v. *Texas, supra.*

We, of course, acknowledge the impossibility of determining whether in fact the jury did or did not ignore Evans' statement inculpating petitioner in determining petitioner's guilt. But that was also true in the analogous situation in *Jackson* v. *Denno,* and was not regarded as militating against striking down the New York pro-

---

[11] See *Crawford* v. *United States,* 212 U. S. 183, 204; *Caminetti* v. *United States,* 242 U. S. 470, 495; *Stoneking* v. *United States,* 232 F. 2d 385.

[12] It is suggested that because the evidence is so unreliable the need for cross-examination is obviated. This would certainly seem contrary to the acceptance of the rule of evidence which would require exclusion of the confession as to Bruton as "inadmissible hearsay, a presumptively unreliable out-of-court statement of a nonparty who was not a witness subject to cross-examination." *Post,* at 138. "The theory of the Hearsay rule is that the many possible deficiencies, suppressions, sources of error and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the test of Cross-examination." 5 Wigmore, Evidence § 1362, at 3. The reason for excluding this evidence as an *evidentiary* matter also requires its exclusion as a *constitutional* matter. Surely the suggestion is not that *Pointer* v. *Texas,* for example, be repudiated and that all hearsay evidence be admissible so long as the jury is properly instructed to weigh it in light of "all the dangers of inaccuracy which characterize hearsay generally." *Post,* at 141.

cedure there involved. It was enough that that procedure posed "substantial threats to a defendant's constitutional rights to have an involuntary confession entirely disregarded and to have the coercion issue fairly and reliably determined. These hazards we cannot ignore." 378 U. S., at 389. Here the introduction of Evans' confession posed a substantial threat to petitioner's right to confront the witnesses against him, and this is a hazard we cannot ignore. Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all. See *Anderson* v. *United States,* 318 U. S. 350, 356–357; cf. *Burgett* v. *Texas,* 389 U. S. 109, 115.

*Reversed.*

MR. JUSTICE BLACK concurs in the result for the reasons stated in the dissent in *Delli Paoli* v. *United States,* 352 U. S. 232, 246.

MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.

MR. JUSTICE STEWART, concurring.

I join the opinion and judgment of the Court. Although I did not agree with the decision in *Jackson* v. *Denno,* 378 U. S. 368 (see *id.,* at 427), I accept its holding and share the Court's conclusion that it compels the overruling of *Delli Paoli* v. *United States,* 352 U. S. 232.

Quite apart from *Jackson* v. *Denno,* however, I think it clear that the underlying rationale of the Sixth Amendment's Confrontation Clause precludes reliance upon cautionary instructions when the highly damaging out-of-

court statement of a codefendant, who is not subject to cross-examination, is deliberately placed before the jury at a joint trial. A basic premise of the Confrontation Clause, it seems to me, is that certain kinds of hearsay (see, *e. g., Pointer* v. *Texas,* 380 U. S. 400; *Douglas* v. *Alabama,* 380 U. S. 415) are at once so damaging, so suspect, and yet so difficult to discount, that jurors cannot be trusted to give such evidence the minimal weight it logically deserves, *whatever* instructions the trial judge might give. See the Court's opinion, *ante,* at 136, n. 12. It is for this very reason that an out-of-court accusation is universally conceded to be constitutionally *inadmissible* against the accused, rather than admissible for the little it may be worth. Even if I did not consider *Jackson* v. *Denno* controlling, therefore, I would still agree that *Delli Paoli* must be overruled.

MR. JUSTICE WHITE, dissenting.

Whether or not Evans' confession was inadmissible against him, nothing in that confession which was relevant and material to Bruton's case was admissible against Bruton. As to him it was inadmissible hearsay, a presumptively unreliable out-of-court statement of a nonparty who was not a witness subject to cross-examination. Admitting Evans' confession against Bruton would require a new trial unless the error was harmless.

The trial judge in this case had no different view. He admitted Evans' confession only against Evans, not against Bruton, and carefully instructed the jury to disregard it in determining Bruton's guilt or innocence.*

---

*As the Court observes, "[i]f . . . the jury disregarded the reference to the codefendant, no question would arise under the Confrontation Clause . . . ." *Ante,* at 126. Because in my view juries can reasonably be relied upon to disregard the codefendant's references to the defendant, there is no need to explore the special considerations involved in the Confrontation Clause.

Contrary to its ruling just a decade ago in *Delli Paoli* v. *United States,* 352 U. S. 232 (1957), the Court now holds this instruction insufficient and reverses Bruton's conviction. It would apparently also reverse every other case where a court admits a codefendant's confession implicating a defendant, regardless of cautionary instructions and regardless of the circumstances. I dissent from this excessively rigid rule. There is nothing in this record to suggest that the jury did not follow the trial judge's instructions. There has been no new learning since *Delli Paoli* indicating that juries are less reliable than they were considered in that case to be. There is nothing in the prior decisions of this Court which supports this new constitutional rule.

The Court concedes that there are many instances in which reliance on limiting instructions is justified— "Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently." *Ante,* at 135. The Court asserts, however, that the hazards to the defendant of permitting the jury to hear a codefendant's confession implicating him are so severe that we must assume the jury's inability to heed a limiting instruction. This was the holding of the Court with respect to a confession of the defendant himself in *Jackson* v. *Denno,* 378 U. S. 368 (1964). There are good reasons, however, for distinguishing the codefendant's confession from that of the defendant himself and for trusting in the jury's ability to disregard the former when instructed to do so.

First, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. Though itself an out-of-court statement, it is admitted as reliable evidence because it is an admission of guilt by the defendant and constitutes

direct evidence of the facts to which it relates. Even the testimony of an eyewitness may be less reliable than the defendant's own confession. An observer may not correctly perceive, understand, or remember the acts of another, but the admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so. This was the conclusion of the Court in *Jackson,* and I continue to believe that case to be sound law.

Second, it must be remembered that a coerced confession is not excluded because it is thought to be unreliable. Regardless of how true it may be, it is excluded because specific provisions of the Constitution demand it, whatever the consequences for the criminal trial. In *Jackson* itself it was stated that "[i]t is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession . . . ." 378 U. S., at 376. See *id.,* at 385–386. In giving prospective effect only to its rules in *Miranda* v. *Arizona,* 384 U. S. 436 (1966), the Court specifically reaffirmed the principle that coerced confessions are inadmissible regardless of their truth or falsity, *Johnson* v. *New Jersey,* 384 U. S. 719, 729, n. 9 (1966). The Court acknowledged that the rules of *Miranda* apply to situations "in which the danger [of unreliable statements] is not necessarily as great as when the accused is subjected to overt and obvious coercion." *Id.,* at 730. And, in *Tehan* v. *United States ex rel. Shott,* 382 U. S. 406, 416 (1966), holding the rule of *Griffin* v. *California,* 380 U. S. 609 (1965), not retroactive, the Court quite explicitly stated that "the Fifth Amendment's privilege against self-incrimination is not

an adjunct to the ascertainment of truth. That privilege, like the guarantees of the Fourth Amendment, stands as a protection of quite different constitutional values . . . ." The exclusion of probative evidence in order to serve other ends is sound jurisprudence but, as the Court concluded in *Jackson* v. *Denno,* 378 U. S., at 382, juries would have great difficulty in understanding that policy, in putting the confession aside, and in finding the confession involuntary if the consequence was that it could not be used in considering a defendant's guilt or innocence.

The situation in this case is very different. Here we deal with a codefendant's confession which is admitted only against the codefendant and with a firm instruction to the jury to disregard it in determining the defendant's guilt or innocence. That confession cannot compare with the defendant's own confession in evidentiary value. As to the defendant, the confession of the codefendant is wholly inadmissible. It is hearsay, subject to all the dangers of inaccuracy which characterize hearsay generally. Furthermore, the codefendant is no more than an eyewitness, the accuracy of whose testimony about the defendant's conduct is open to more doubt than would be the defendant's own account of his actions. More than this, however, the statements of a codefendant have traditionally been viewed with special suspicion. *Crawford* v. *United States,* 212 U. S. 183, 204 (1909); *Holmgren* v. *United States,* 217 U. S. 509, 523–524 (1910). See also *Caminetti* v. *United States,* 242 U. S. 470, 495 (1917); Mathes, Jury Instruction and Forms for Federal Criminal Cases, 27 F. R. D. 39, 68–69 (1961). Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence. Whereas the defendant's own confession possesses greater reliability and eviden-

tiary value than ordinary hearsay, the codefendant's confession implicating the defendant is intrinsically much less reliable.

The defendant's own confession may not be used against him if coerced, not because it is untrue but to protect other constitutional values. The jury may have great difficulty understanding such a rule and following an instruction to disregard the confession. In contrast, the codefendant's admissions cannot enter into the determination of the defendant's guilt or innocence because they are unreliable. This the jury can be told and can understand. Just as the Court believes that juries can reasonably be expected to disregard ordinary hearsay or other inadmissible evidence when instructed to do so, I believe juries will disregard the portions of a codefendant's confession implicating the defendant when so instructed. Indeed, if we must pick and choose between hearsay as to which limiting instructions will be deemed effective and hearsay the admission of which cannot be cured by instructions, codefendants' admissions belong in the former category rather than the latter, for they are not only hearsay but hearsay which is doubly suspect. If the Court is right in believing that a jury can be counted on to ignore a wide range of hearsay statements which it is told to ignore, it seems very odd to me to question its ability to put aside the codefendant's hearsay statements about what the defendant did.

It is a common experience of all men to be informed of "facts" relevant to an issue requiring their judgment, and yet to disregard those "facts" because of sufficient grounds for discrediting their veracity or the reliability of their source. Responsible judgment would be impossible but for the ability of men to focus their attention wholly on reliable and credible evidence, and jurymen are no less capable of exercising this capacity than other

men.   Because I have no doubt that serious-minded and responsible men are able to shut their minds to unreliable information when exercising their judgment, I reject the assumption of the majority that giving instructions to a jury to disregard a codefendant's confession is an empty gesture.

The rule which the Court announces today will severely limit the circumstances in which defendants may be tried together for a crime which they are both charged with committing.   Unquestionably, joint trials are more economical and minimize the burden on witnesses, prosecutors, and courts.   They also avoid delays in bringing those accused of crime to trial.   This much the Court concedes.   It is also worth saying that separate trials are apt to have varying consequences for legally indistinguishable defendants.   The unfairness of this is confirmed by the common prosecutorial experience of seeing codefendants who are tried separately strenuously jockeying for position with regard to who should be the first to be tried.

In view of the practical difficulties of separate trials and their potential unfairness, I am disappointed that the Court has not spelled out how the federal courts might conduct their business consistent with today's opinion.   I would suppose that it will be necessary to exclude all extrajudicial confessions unless all portions of them which implicate defendants other than the declarant are effectively deleted.   Effective deletion will probably require not only omission of all direct and indirect inculpations of codefendants but also of any statement that could be employed against those defendants once their identity is otherwise established.   Of course, the deletion must not be such that it will distort the statements to the substantial prejudice of either the declarant or the Government.   If deletion is not feasible, then the Government will have to choose either not to

use the confession at all or to try the defendants separately. To save time, money, and effort, the Government might best seek a ruling at the earliest possible stage of the trial proceedings as to whether the confession is admissible once offending portions are deleted. The failure of the Government to adopt and follow proper procedures for insuring that the inadmissible portions of confessions are excluded will be relevant to the question of whether it was harmless error for them to have gotten before the jury. Oral statements, such as that involved in the present case, will present special problems, for there is a risk that the witness in testifying will inadvertently exceed permissible limits. Except for recommending that caution be used with regard to such oral statements, it is difficult to anticipate the issues which will arise in concrete factual situations.

I would hope, but am not sure, that by using these procedures the federal courts would escape reversal under today's ruling. Even so, I persist in believing that the reversal of *Delli Paoli* unnecessarily burdens the already difficult task of conducting criminal trials, and therefore I dissent in this case.

MR. JUSTICE HARLAN joins this opinion without abandoning his original disagreement with *Jackson* v. *Denno,* 378 U. S. 368, 427, expressed in his dissenting opinion in that case.