**Ricardo PEREZ GOITIA, Defendant, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 7106.**

United States Court of Appeals First Circuit.

April 15, 1969.

Albert J. Krieger, New York City, with whom Benicio Sanchez Castano, San Juan, P. R., was on the brief, for appellant.

Thomas O'Leary, Atty., Dept. of Justice, with whom Fred M. Vinson, Jr., Asst. Atty. Gen., and Francisco A. Gil, Jr., U. S. Atty., were on the brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant was charged in a three count indictment with violation of the narcotics laws. The case went to trial on October 2, 1967,[1] on which date he appeared in court with counsel. After the trial had commenced, defendant jumped bail and absconded.[2] Invoking Fed.R.Crim.P. 43,[3] the district court ordered the trial to continue without him. The jury returned a verdict of guilty on all three counts.[4] In this appeal defendant contends principally that the district court abused its discretion in resorting to trial in absentia; that he was not effectively represented by counsel and further, that reversible error was committed in the presentation of the government's case.

In view of the issues raised we think it necessary to recite the facts in some detail. Shortly after his arrest on July 17, defendant was brought before a United States Commissioner. He was represented by Attorney Cesar Andreu Ribas, who obtained his release on bail. On August 7 the indictment was filed and four days later, at Attorney Andreu's request, the arraignment was continued to August 21 and the defendant was

---

1. All dates hereinafter mentioned refer to the year 1967.

2. After an extended odyssey, he was finally apprehended in New York City on November 30.

3. "In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict  *  *  * "  The death penalty is not involved in this case.

4. Thereafter defendant was sentenced to concurrent thirty year terms and noncumulative $10,000 fines.

granted permission to travel to the Dominican Republic to get his family. On August 21 the defendant, now represented by Benicio Sanchez Castano in addition to Andreu, pleaded not guilty to the indictment, was released on bail and the case was set for trial on September 18. At his attorneys' request, defendant's trial was later continued to October 2.

On September 11 defendant's attorneys moved for another continuance and also for a bill of particulars. The government filed its bill of particulars on September 28, but no disposition was made of the motion for a continuance. On October 2, the day set for trial, defendant through his attorneys, moved to dismiss the indictment for want of jurisdiction. Counsel also requested a further continuance on the ground that the government's incomplete bill of particulars made proper investigation of the case impossible and that due to the illness of the defendant's son, counsel had no chance to confer with their client. After both of these motions were denied Sanchez and Andreu asked the court's permission to withdraw as defense counsel which request was denied.

The court then proceeded to impanel a jury in which undertaking it got little, if any, cooperation from the defendant's attorneys. In fact the defense declined to exercise any challenges despite repeated opportunities given to it by the court to do so, a course of conduct in which the defendant himself acquiesced. After the jury was finally impanelled, the district court continued the trial to October 5 to give defense counsel more time for preparation and, as the court frankly acknowledged, to avoid a collision over what amounted to refusal by counsel to proceed with trial on October 2.

On October 5 the court and jury gathered at the appointed time, but Attorney Andreu was late, Attorney Sanchez was at home ill, and the defendant did not appear at all. After further delays during which the court established that the defendant had voluntarily absented himself, the trial was resumed the following evening (October 6) at 8 p. m. Attorney Sanchez was not on hand and Attorney Andreu was reluctant to proceed, saying that the defendant no longer desired his services. After expressing confidence in Andreu, the court appointed yet another attorney, Stanley Feldstein, to assist him.

The trial itself was very brief and the participation of defense counsel perfunctory, to say the least. The prosecutor made a brief opening statement, presented stipulations as to testimony by two government witnesses on somewhat formal matters;[5] and then called a government agent named Fortunato Jorge, who testified on the substance of the government's case. The prosecutor's summation followed. Defense counsel made no statement to the jury, presented no evidence and did not cross-examine Jorge (although the court itself asked him certain clarifying questions). In the face of such a recital it would require a strong portion of ingenuity to suggest that the court had been less than fair to this defendant.

■ It is not disputed that if, after the beginning of trial in noncapital cases the defendant voluntarily absents himself, the trial may continue in his absence. Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912); Cureton v. United States, 130 U.S.App.D.C. 22, 396 F.2d 671 (1968); Fed.R.Crim.P. 43. Nor is it disputed that in this case the trial had begun, the jury having already been impanelled. *Diaz, supra*, at 455, 32 S.Ct. 250. Defendant contends that the propriety of trial in absentia must be judged on the basis of what the court knew at the time it ruled on this matter

---

5. The first was testimony by a chemist that the substance in question was heroin. The second was testimony by a Commonwealth official that there was no record that the defendant had authorization to sell narotics.

and cannot be validated by subsequent events.

■ The principle may be conceded but it does not aid this defendant. Here the trial was scheduled to begin at 9 a. m. on October 5 but in fact did not begin until 8 p. m. on the 6th. When the defendant did not appear on the 5th, the court did not immediately jump to conclusions despite the fact that this was the third missing defendant that week in a related series of cases and, indeed, involving the same attorneys.[6] Instead, it waited, on the theory that the defendant like Attorney Andreu might have misunderstood the assigned time. Even then, after several additional delays, the court made no final decision to go ahead with the trial until it learned that the investigative authorities had concluded that the defendant had fled the jurisdiction and until a marshal and Attorney Andreu reported a conversation in which defendant had said he would absent himself.[7]

■ This conversation provides an aspect of defendant's next contention, that he did not receive effective representation by counsel of his choice. Assuming that Attorney Andreu heard the defendant say he was about to flee, it is contended he would be a potential witness against the defendant in a future trial for bail jumping and this would present an irreconcilable conflict of interest. This proposition is not supported by cita-tion of authority and in our opinion is inaccurate. The term "conflict of interest" bespeaks a situation in which regard for one duty tends to lead to disregard of another. The obvious example of this is representation of clients with incompatible interests.[8] The courts have not been slow to correct such abuses. Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 86 L.Ed. 680 (1942); see Rolon Marxuach v. United States, 398 F.2d 548 (1st Cir.), cert. denied, 393 U.S. 982, 89 S.Ct. 454, 21 L.Ed.2d 443 (1968). While conflicts of many types can be imagined, see generally Annot. 17 A.L.R.3rd 835 (1968), it is difficult to see how the situation here presents a conflict of any sort.

■ Technical conflict of interest apart, defendant next asserts that his relations with Attorney Andreu had deteriorated to such an extent that the attorney-client relationship had ceased to exist and indeed that at the trial no defense worthy of the name was presented.[9] We note first that lack of rapport between attorney and client does not automatically mean that there has been inadequate representation. Lamoureux v. Mass., No. 7200 (1st Cir. March 20, 1969). Further, Attorney Andreu was thoroughly competent to try the case, as we have already determined in the similar case of *Rolon Marxuach, supra,* at 551. Nor did he lack zeal, although this was best demonstrated in matters that tended to delay the trial. If at the actual

---

6. In defendant's brief it is laconically conceded that "[i]t is reasonable to assume that Goitia fled the jurisdiction subsequent to trial."

7. Defendant stresses that on the morning of October 6, in the proceedings in a related case, the court indicated that it would proceed as soon as possible with the Goitia case, because the defendant had voluntarily absented himself. Without for a moment intimating that the court was not justified in making such a declaration on the basis of its knowledge at that point, we note that the decision to go forward with the trial was not final until the court had completed its painstaking inquiry on the evening of the trial itself.

8. See ABA Canons of Professional Ethics No. 6: "Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose."

9. It is even suggested that defendant dismissed Attorney Andreu. But the defendant never informed the court of such a desire and in any event the right to choice of counsel may not be allowed to lead to the disruption of court proceedings. Bostick v. United States, 400 F.2d 449 (5th Cir. 1968); Dearinger v. United States, 344 F.2d 309 (9th Cir. 1965); see also United States v. Crespo, 398 F. 2d 802 (2d Cir. 1968).

trial counsel were inactive there is reason to believe that defendant himself concurred in this strategy, as evidenced by his conduct during the selection of jurors. We will not assume that a defendant who voluntarily absents himself from the trial is greatly concerned with presenting an energetic defense.

In voluntarily absenting himself from the trial we think this defendant lost his opportunity to change counsel if this is what he wished and repudiated his right to appear and be confronted by witnesses. To hold otherwise would allow him to make a mockery of the judicial process at his own whim.

Of the objections raised to the presentation of the government's case we need discuss but one. In its closing argument the prosecution made several references which could be interpreted as comments on the defendant's failure to testify.

"You have heard the testimony of the Government, the only evidence before you.

"Fortunato Jorge has proved the case beyond a reasonable doubt. I don't think I should argue any more. There should be no doubt as to the Government's having proved beyond a reasonable doubt the three counts. Ricardo Perez Goitia, according to the testimony, had in his possession the narcotic drug, Ricardo Perez Goitia sold the narcotic drug to the special employee. There is no other testimony to the contrary. The only evidence you have is the testimony of Fortunato Jorge, which has not been impeached or cross-examined by the attorney for the defense."

Although part of this was quite improper, we do not think it is grounds for reversal in this case. In the first place there was no objection to these remarks. Compare Holden v. United States, 388 F.2d 240 (1st Cir. 1968), cert. denied, 393 U.S.

864, 89 S.Ct. 146, 21 L.Ed.2d 132, with Desmond v. United States, 345 F.2d 225 (1st Cir. 1965). Second, the reference to "impeached or cross-examined by the attorney for the defense" tended to focus attention—legitimately—on the absence of impeachment by cross-examination rather than on contradiction by some other witness. Cf. Holden v. United States, 393 F.2d 276 (1st Cir. 1968). Finally, the court instructed the jury in clear language that

"[t]he fact that the defendant has not testified in this case must not be considered or given any consideration by you whatsoever in your appraisal of the evidence presented to you. This is totally improper and should not be discussed or considered, because it is a constitutional right which everyone has not to testify in his own case."

We recognize that admonitory instructions may be ineffective. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). But Bruton was concerned with an instruction to a jury to consider a confession against one codefendant but not against another, although it implicated both. This was a call to a sort of intellectual and moral heroism. Much of the discussion of authorities in Bruton presupposed such a context. See Jackson v. Denno, 378 U.S. 368, 388–389, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). In the instant case, however, a jury that is able and willing to disregard defendant's failure to testify in the first place—and a defendant has to run this risk in any event [10]—is likely to be equally capable of ignoring prosecution comments which, after all, were not of an aggravated sort. The truly aggravating feature in this case is that the jury was aware that defendant was not even present. But for this the defendant had only himself to blame. Even this the court cured as best it could by appropriate instruction to the jury.

Affirmed.

---

10. Compare *Bruton, supra,* at 131, 88 S.Ct. 1620, where it is pointed out that the problem in that case could have been solved by severance. See Fed.R.Crim. P. 14.