THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MATTHEW WALLACE, JR., Appellant.

Second Department, May 11, 1970.

*Maurice S. Baruch* for appellant.

*Eugene Gold, District Attorney* (*William I. Siegel* of counsel), for respondent.

LATHAM, J. In March, 1947, the appellant and his codefendant, Jauvhan Jackson, were tried jointly and convicted of murder in the first degree. Jackson was sentenced to death and subsequently electrocuted. The appellant, because of the jury's recommendation of mercy as to him, was sentenced to life imprisonment.

In support of his *coram nobis* application, now under review, the appellant has contended that his constitutional right of

confrontation under the Sixth Amendment was violated at the trial, because of the admission in evidence of extrajudicial statements made by Jackson, which, *inter alia,* implicated the appellant in the commission of the crime. He also argues that the Trial Justice, having once admitted the implicating statements in evidence, should have ordered a severance or at least redacted those portions of the statements which connected him to the crime.

Shortly after they were apprehended, each of the defendants made a statement which, *inter alia,* implicated himself and the other. At the trial the implicating statements were received in evidence with limiting instructions that each statement was binding only against the declarant.

The appellant and Jackson were jointly indicted for the murder of one Leslie Natter. The homicide was allegedly committed by them while they were engaged in a robbery in the office of a manufacturing business in which Natter was a partner.

Evidence adduced by the People was to the effect that both defendants had conspired to commit the holdup on January 3, 1947 because they had learned it was a payday, that Natter was shot to death by Jackson during the holdup, and that the appellant was present and participated in the holdup with Jackson. Both Jackson and the appellant contended that Natter was accidentally killed after they had abandoned their robbery scheme. Each testified, *inter alia,* that although they had plotted and participated jointly in the holdup they attempted to withdraw from the premises after Natter told them that the employees had already been paid; however, according to both defendants, a scuffle ensued after Natter told them this, resulting in Natter being accidentally shot and killed by Jackson. Each of the defendants' incriminating statements mentioned above contained the same version of the alleged occurrence and closely dovetailed with the defendants' trial testimony.

In his summation to the jury, one of the attorneys for both defendants stated, *inter alia*: " There is something about the boys while in this building, gentlemen of the jury, that showed that they had actually given up what they went there for. * * * It showed that * * * when they couldn't get that, they stopped; they ceased; they gave up. And they were willing to leave. They didn't want human life; they didn't want it."

In *Bruton* v. *United States* (391 U. S. 123), a case involving a joint trial in which only one of the defendants confessed, implicating the other, the Supreme Court held that, despite the limiting instructions to the jury, it was error to receive the confession in evidence because of the substantial risk that the jury

would look to the extrajudicial statement in determining the nonconfessor's guilt, thus violating his right to cross-examination under the Sixth Amendment. In *Bruton,* the confessing defendant did not take the stand.

Here the appellant argues that, notwithstanding the fact that Jackson did testify at the trial, *Bruton* is applicable. He contends that Jackson was not, and could not have been, cross-examined on his (appellant's) behalf, since the same firm of attorneys represented both of them at the trial; and that the appellant and Jackson had adverse interests.

In my opinion, after reading the minutes of the trial, this argument is specious and untenable. The record clearly demonstrates that not only was there no hostility between the appellant and his codefendant at the trial but in fact they collaborated with each other and entered a common or joint defense to the charge. The thrust of their common or joint defense was that no felony murder had been committed by them, since they had abandoned their scheme to commit the robbery before the accidental killing of Natter took place. The appellant's testimony confirmed and did not in any material way differ from the implicating statement of Jackson. Thus, it cannot be said that their attorneys at the trial represented adverse interests.

Therefore, since the appellant collaborated with Jackson in a single version as to what allegedly had transpired, and each told essentially the same story at the trial, I am of the opinion that he elected to forego his opportunity to cross-examine Jackson. Furthermore, the rationale of *Bruton* is not applicable where each defendant has made a full and voluntary confession, both of which are identical (*People* v. *McNeil,* 24 N Y 2d 550; *People* v. *Galloway,* 24 N Y 2d 935).

Similarly, I believe the issue as to redaction is academic in view of the fact that the appellant's testimony as to the part he had played in the holdup was essentially similar to the portions of Jackson's statements which implicated the appellant.

Since the appellant participated actively and freely in the joint defense strategy discussed above, and his testimony and that of Jackson were all part of such defense strategy, he should not be allowed to argue successfully at this time that the trial court should have ordered a severance on its own motion.

Accordingly, the order denying the application in the nature of a writ of error *coram nobis* should be affirmed.

CHRIST, P. J., RABIN, HOPKINS and MUNDER, JJ., concur.

Order affirmed.