State v. Matthews

STATE OF NORTH CAROLINA v. DELMAR GROVER MATTHEWS
AND JERRY WASHINGTON COLLINS

No. 7317SC826

(Filed 27 December 1973)

1. Robbery § 4— common law robbery — sufficiency of evidence

Evidence in a common law robbery case was sufficient to be submitted to the jury where it tended to show that defendant, who knew his victim, and a companion took the victim a short distance from his home to discuss a matter with him, defendant engaged the victim in conversation while the companion approached him from the rear, the companion hit the victim with a pipe several times, defendant choked

him and stomped on him, and when the victim recovered consciousness later the defendant, his codefendant and the victim's billfold were gone.

**2. Criminal Law §§ 92, 95— joint trial — admissibility of codefendant's confession — no error**

A confession made by a codefendant in defendant's presence while they were both in the same jail cell was admissible where the cases against defendant and his codefendant for common law robbery of the same man were consolidated for trial, though the declarant did not testify, and the rule of *Bruton v. U. S.*, 391 U.S. 123, did not apply to require exclusion of the confession; furthermore, any incrimination of defendant by the codefendant's statement was of insignificant probative value in relation to the mass of competent and admitted evidence against defendant.

APPEAL by both defendants from *Kivett, Judge,* 18 June 1973 Session, SURRY County Superior Court.

Each defendant was charged under a proper bill of indictment with common law robbery. Without objection, the two cases were consolidated for trial. Each defendant entered a plea of not guilty, was found guilty of common law robbery, received a sentence of 10 years in the State's Prison, and noted an appeal.

The evidence on behalf of the State tended to show that Gene Heath, a tobacco farmer in Surry County, was in the habit of carrying large sums of money with him at all times; and this was known to the defendant Matthews. Matthews was a lifelong friend of Heath and had frequently associated with him; had worked for Heath; had been a drinking companion of Heath; and on frequent occasions Heath and Matthews had visited each other; and on occasions Heath had loaned money to Matthews, which Matthews had always paid back. On 4 December 1972, Heath had gone off with an older brother and another friend, and they had been on a drinking spree. During the course of the spree, the three of them had visited various places. About 5:00 p.m. in 5 December 1972, the spree terminated with the older brother bringing Heath back home. As they arrived home, the two defendants were leaving the home of Heath. The older brother left and Heath went over to speak to the two defendants. Heath did not know the defendant Collins, but Matthews introduced them and then invited Heath to have a beer with them. Heath told them that he had been on a spree and felt sick and did not want anthing else to drink. Thereupon, Matthews told Heath that he had a matter that he would like to

discuss with him; and thereupon, the two defendants and Heath got in the automobile driven by the defendant Collins and proceeded a short distance away from the home to a tobacco barn. On arriving at the tobacco barn, Matthews and Heath got out of the automobile and went around the side of the barn, leaving Collins in the automobile. Matthews inquired of Heath as to how his farming operations were progressing. Heath told him; and they were engaged in just a casual conversation with Heath waiting to ascertain what it was Matthews wanted to discuss with him, when Heath heard footsteps behind him and turned just in time to see the defendant Collins with an iron pipe in his hand coming down on the back of Heath's head. Heath was knocked to the ground but not unconscious; and as he started to rise, he was struck again by Collins and then Matthews grabbed him by the throat and then proceeded to stomp Heath while Collins struck him the third time in the back of the head. Heath was rendered unconscious; and when he regained consciousness some fifteen or twenty minutes later, both defendants were gone, together with a billfold from Heath's pocket containing $1,388.00. Heath returned to his home where his wife and daughter took him to Pilot Mountain for medical attention. Before receiving medical attention, however, Heath insisted on stopping by the Police Department and reported the robbery.

Police officers found, at the tobacco barn in question, blood, a piece of pipe some eighteen to twenty inches in length and about three-quarters of an inch in diameter, and a torn pants pocket which had been the pocket in which Heath carried his billfold.

It was about 6:15 p.m. on Tuesday, 5 December 1972, when Heath reported the robbery to the police officers in the police station in Pilot Mountain. Shortly before 8:00 p.m. on the same evening, the defendants were seen in the automobile in which they had been traveling earlier at the Heath home. Collins was still driving the vehicle, and Matthews was in it. They were both placed under arrest, Collins for driving under the influence of an intoxicating liquor, and Matthews for being publicly drunk. Pursuant to these charges, they were both locked up in the same cell in the Pilot Mountain Jail. About 9:30 p.m., Police Officer Stanley went to the cell and proceeded to read to Collins the warrant charging him with robbery. While he was reading the warrant, Collins interrupted to say, "I wish that I had killed the God damn son of a bitch now." Matthews

was in the cell at the time and said nothing understood by Stanley.

When Police Officer Stanley testified to the statement made to him by Collins in the jail cell, the trial judge immediately advised the jury as follows:

"Now Ladies and Gentlemen, I instruct you that with respect to that statement, that first of all, you have to to determine whether you believe that it was made. If you conclude that it was made, then I instruct you that you may consider it only insofar as it may refer to the defendant Collins, you may not in any way, and I specifically instruct you, don't consider it in any way with respect to the defendant Matthews. It refers solely to Collins and it it would be highly improper for you to consider it in any way against the defendant Matthews."

The defendant Collins did not go on the witness stand, but the defendant Matthews did go up on the witness stand. Matthews testified that he was in the cell with Collins when the warrants were read to both him and Collins. He stated that Officer Manuel read the warrant to him and that another officer read the warrant to Collins. He stated that when the other officer read the warrant to Collins, that Collins stated, "Red, now you know if I had done robbed or rolled anybody or hit them with an iron pipe or anything like that, you know that I would have killed the man, I would have killed the man if I had done something like that." Again, on cross-examination, the defendant Matthews testified:

"I did not hear Collins say words to the effect of I wish that I had killed the son of a bitch. Collins said to Mr. Manuel, when he read the warrants to him, he said, 'Red, you know if I would have done something like that, rolled a man for his money and hit him,' says, 'I would have killed him.'"

*Attorney General Robert Morgan by Assistant Attorney General Lester V. Chalmers, Jr., for the State.*

*Fred E. Lewis III for defendant appellant, Delmar Grover Matthews.*

*Charles H. Randleman for defendant appellant, Jerry Washington Collins.*

CAMPBELL, Judge.

We will treat the two appeals separately.

COLLINS' APPEAL

This appeal presents only the record for review. We have carefully examined the record, including the bill of indictment, plea and the judgment; and we find no prejudicial error appearing therein.

MATTHEWS' APPEAL

[1] There was plenary evidence when considered in the light most favorable to the State to take the case to the jury. There was no error in denying the defendant Matthews' motion for nonsuit.

The defendant Matthews assigns as error the denial of his motion for a severance and mistrial on account of the incriminating statement made by the codefendant Collins.

[2] The defendant relies upon the rule laid down in *Bruton v. United States,* 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620 (1968) and *Roberts v. Russell,* 392 U.S. 293, 20 L.Ed. 2d 1100, 88 S.Ct. 1921 (1968), *reh. denied,* 393 U.S. 899, 21 L.Ed. 2d 191, 89 S.Ct. 73 (1968). We do not think the *Bruton* rule is controlling in the instant case. The statement objected to in the instant case was made in the presence of the defendant Matthews when they were both in the same cell and with each other. *State v. Bryant,* 250 N.C. 113, 108 S.E. 2d 128 (1959). In *State v. Fox,* 274 N.C. 277, 291, 163 S.E. 2d 492, 502 (1968), the North Carolina Supreme Court, in discussing the *Bruton* rule, stated:

" . . . The foregoing pronouncement presupposes (1) that the confession is inadmissible as to the codefendant (see *State v. Bryant, supra),* and (2) that the declarant will not take the stand. . . . "

In the instant case the declarant Collins did not take the stand; but since under the rule of *State v. Bryant* the confession was admissible, the *Bruton* rule does not apply. Furthermore, any incrimination of Matthews by the statement attributed to Collins was of insignificant probative value in relation to the mass

---

of competent and admitted evidence against Matthews. *State v. Jones*, 280 N.C. 322, 185 S.E. 2d 858 (1972).

The charge to the jury was unexcepted to and not in the record. It is therefore presumed to be adequate, fair and non-prejudicial.

In the trial of Matthews we find no prejudicial error.

Collins no error.

Matthews no error.

Judges HEDRICK and BALEY concur.