**UNITED STATES of America,**

v.

**HONG LOI CHENG et al., Defendants.**

No. 72 Cr. 942.

United States District Court,
S. D. New York.

Nov. 6, 1972.

---

Whitney North Seymour, Jr., U. S. Atty., New York City, for United States; by Barbara Ann Rowan, New York City, of counsel.

Segal & Hundley, New York City, for defendant Guan Chow Tok.

GURFEIN, District Judge.

The defendant Guan Chow Tok moves for an order (1) dismissing counts one and four of the indictment against him on the ground of prejudicial pre-trial publicity, or in the alternative for a severance under Fed.R.Crim.P. 14 or a continuance of the trial until the effect of pre-trial publicity disappears; (2) severing his trial from that of the other three defendants on the ground that "the defendant will be prejudiced by joinder in that the Government will introduce at trial statements by a co-defendant which will incriminate the defendant herein"; (3) directing the United States Attorney to furnish a bill of particulars pursuant to Rule 7(f); and (4) directing the United States Attorney to permit the inspection and copying of certain specified documents.

The indictment is in four counts. The first count charges a conspiracy from about April 1, 1972 to the date of the indictment, August 28, 1972, to violate Sections 812, 841(a)(1) and 841(b)(1)(A) of Title 21, United States Code. Three defendants, in addition to Tok, were named as defendants. It is alleged that it was part of the conspiracy to distribute and to possess with intent to distribute Schedule I and Schedule II narcotic drug controlled substances. Eleven overt acts are alleged. The defendant Tok is also named in the fourth count which alleges that on or about August 22, 1972, four defendants, including Tok, unlawfully distributed and possessed with intent to distribute a Schedule I narcotic drug controlled substance, to wit approximately 20 pounds of heroin.

### THE MOTION BASED ON PRE-TRIAL PUBLICITY

Guan Chow Tok contends that the story which appeared in Time Magazine's issue of September 4, 1972 amounted to prejudicial pre-trial publicity. He also contends that his plea for relief is the more compelling because "the Government is the provocateur."

The Time article was prefaced by the following comment on the cover story:

"Correspondent James Willwerth was with narcotics agents in Manhattan last week when they were tipped off about an incoming shipment of drugs. Willwerth accompanied the agents to an observation post on the

third floor of New York's Beekman Downtown Hospital and witnessed on the street below a long session of bargaining between several Chinese drug traffickers and an undercover agent with $200,000 in cash. The final 'connection' took place several blocks away, followed within minutes by flashing police lights, drawn guns, and the biggest New York heroin haul of the summer."

The cover of Time was captioned "The Global War on Heroin." The cover story was headed "Search and Destroy—The War On Drugs." Although the incident leading to the indictment of these four defendants was the first part of the cover story, it was essentially a round up of heroin sources abroad, how heroin is imported, and what steps the American authorities have taken to meet the problem.

The recital of the incident and the arrest was quite matter of fact, using a kind of descriptive prose that one might use in a movie scenario. In other words, it described simple action without adjectives or pejorative words of any kind. Nor was there any attempt to give the background of the defendants or to assess their character or reputation. In short, there is nothing in the article which, on its face, would not be admissible in evidence.

If it was the intention of the Bureau of Narcotics and Dangerous Drugs to get a prejudicial story from the Time correspondent, which I doubt, it would have failed in its purpose. Mr. Willwerth wrote nothing more than a preview of the drama lawfully to be enacted in the courtroom.

■ Insofar as the incident was tied to world-wide events in the world of narcotics, I daresay it had no more impact on the attitude of the average reader than the natural awareness of his own revulsion to the drug traffic *whenever* he reads of a heroin arrest. In sum, the article would not prejudice the average reader. The famous cases cited by the defendant are for that reason inapposite. See Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Rideau v. Louisiana, 373 U.S. 723, 83 S. Ct. 1417, 10 L.Ed.2d 663 (1963); Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L. Ed.2d 600 (1966). Nor was the news coverage continuous and inherently prejudicial as in Delaney v. United States, 199 F.2d 107 (1 Cir. 1952), or in Irvin v. Dowd, *supra*. The Government has given the case no additional publicity and has certainly not sought to generate a public animus against these defendants.

■ In any event, the trial is set for three months after the article appeared, "a significant factor in assessing claims of prejudice resulting from pre-trial publicity," United States v. Bowe, 360 F.2d 1, 11 (2 Cir. 1966), cert. denied, 385 U.S. 961, 87 S.Ct. 401, 17 L.Ed.2d 306 (1966); and particularly because the names are Chinese and difficult to remember, it is unlikely that even Time readers will remember the article or associate it with the defendants. Lastly, we have a large cross-section of the population on our jury panel and it will by no means be dominated by Time readers. A careful voir dire of the jurors called, through questions proposed by defense counsel, will be available. See cases cited in United States v. Hoffa, 156 F.Supp. 495, 499 (S.D.N.Y.1957).

■ While it is open to question whether reporters should be taken on "set-ups" or "raids" likely to result in arrests because of the danger of possible prejudice, a balance must be struck because of the vital public interest in narcotics control. Fortunately no such prejudice as might bring into play the sensitive question of individual right against public information has resulted in this case. Law enforcement authorities, as well as the press, should, how-

ever, approach such ventures with caution.

## THE MOTION TO SEVER

The defendant states that his motion is based upon statements purportedly made by one or more co-defendants which will be introduced at trial and which may incriminate the defendant Tok and that "these statements are admissions made by the co-defendants to agents during the course of events alleged in the indictment." The defendant cites Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) in support of his position.

■ The defendant's reliance on *Bruton* is misplaced. *Bruton* involved a post-arrest confession. What concerns the defendant here is that statements made by co-defendants to Government agents during the course of the conspiracy will prejudice him. They will, indeed, prejudice his chances of acquittal if they are admitted in evidence as made in furtherance of the conspiracy and if the defendant Tok is found to be a member of that conspiracy. But that is the normal course of events in a conspiracy trial, and the defendant Tok has submitted nothing to take his case out of the normal.

## THE MOTION FOR A BILL OF PARTICULARS

■ In addition to the items consented to by the prosecution, the Court will order the United States Attorney to supply the following particulars:

(a) As to the substantive count, Count Four: (#13) "State whether it will be alleged that defendant TOK was a principal in the charges contained in Count Four or whether it will be alleged

only that he aided, counselled, commanded, induced or procured its commission, within the meaning of Title 18 U.S.C. § 2, but is being charged as a principal."

(b) Whether the Government intends to rely on any overt act, in addition to the eleven named in the indictment, to supply the overt act requirement in the conspiracy count only. The Government need not state "all other overt acts which will be alleged to constitute the conspiracy."

(c) With respect to Count Four: (#15) "State whether it will be alleged at trial that the defendant distributed a narcotic drug or possessed a narcotic drug with intent to distribute it; or both."

All other items requested are denied.

## THE MOTION FOR DISCOVERY OF DOCUMENTS

The Government has already permitted defense counsel to hear and view recordings and video tapes. It has also consented to supply its scientific tests.

■ The defendant should be given the right to inspect the books, papers, documents and tangible objects in the custody of the Government which were seized pursuant to a search of defendant Tok's apartment on the night of August 21–22, 1972.

The request for the discovery of documents showing the relationship of the Government agency to Time, Inc. is denied.

The motion to dismiss the indictment or for a continuance is denied. The motion for a severance is denied. The motions for a bill of particulars and discovery are granted only to the extent indicated herein and are, otherwise, in all respects denied.

It is so ordered.