■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD BILLINGSLEY, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered December 16, 1977, convicting him of grand larceny in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. By reason of numerous acts of impropriety committed by the District Attorney during the trial, coupled with the erroneous rulings of the trial court, the defendant was deprived of a fair trial. The trial of the indictment herein concerns a robbery at an Off-Track-Betting office on March 23, 1976 by the codefendant, Robert Funderburk, who, while masquerading as a postman, entered the establishment and demanded money at gun point. About $12,000 was then turned over to him by the defendant, who was the manager of the office. During Funderburk's interrogation on another matter on October 22, 1976, he gave a confession in which he implicated the defendant as his accomplice in the robbery and stated that they shared the money. In the course of the investigation of this matter, interrogation of the defendant by the investigating detective, Walter Clark, also resulted in an inculpatory statement. Following a hearing on a pretrial motion to suppress the statements, the court made an order suppressing so much of Funderburk's statement as preceded his counsel's direction to terminate all inquiry, and denied the motion made on behalf of the defendant. During the trial, at which Funderburk *did not testify,* the District Attorney, while questioning Detective Clark on direct examination, elicited the following response concerning the latter's conversation with the defendant: "Q And can you tell us in substance what you said to him and what he said to you? A Well, I told him that I had in custody the person who had come into the OTB office and after conferring with him, he stated that he and Mr. Billingsley had robbed the place and that this fellow had confessed to this crime and that it was time for him now to confess to the crime." Apart from the obvious hearsay nature of the remark, it constituted a direct violation of the rule expressed in *Bruton v United States* (391 US 123), in which the Supreme Court of the United States held that the admission of a confession made by a codefendant, *who does not testify at the trial,* containing references implicating the defendant, violates the latter's right of confrontation and cross-examination under the Sixth Amendment of the Constitution of the United States (see *People v Meyers,* 56 AD2d 853). Although the damaging remark was contained within the answer of the witness, its prejudicial effect is not

thereby reduced. Near the beginning of his summation, the District Attorney made the following comment: "Secondly, look at something else that Mr. Billingsly [sic] knew. It has been nearly two years since the date of this crime. We all know a lot of things can happen in that amount of time. Mr. Billingsly [sic] knows that too. Look what did happen, witnesses can die, move away, cops can retire, they could be injuried [sic] in the line of duty, anything can happen. Look, Ivan Dunkley no longer works for the OTB, all of these things not to mention time is certainly the enemy of the [sic] or of anyone's memory certainly the People's memory, two years. You never know what's going to happen in two years. Go to trial, you say People produce your witnesses and then it is, you know, let's wait and see. So. I say to you don't be surprised that Richard Billingsly [sic] demanded a trial. It was his right to do so. But, now that he has had this trial now that he has had his rights satisfied, let's see what it is that is revealed here." Implicit in this statement is the impermissible suggestion that the defendant in some manner delayed the trial for two years during which witnesses could die or move away, policemen could retire or be injured in the line of duty or "anything [could] happen. Look, Ivan Dunkley no longer works for the OTB". There was no showing whatever that the defendant delayed the trial, and the obvious effect of this comment was to implant in the minds of the jurors that the defendant contrived the delay in order to obtain an unfair advantage over the prosecuting attorney. In referring to the circumstances prevailing when the defendant gave his confession, the District Attorney made the following comment: "I don't want to go any further than that, what he himself said about his confession. The circumstances surrounding it. Well, he was questioned by a gang of detectives. They were taking turns. They had big bright lights shining on his face. Just like we see in the movies *with all the gangsters.*" (Emphasis supplied.) This statement was calculated to equate the defendant with "gangsters". It was far beyond the bounds of reasonable advocacy and an extremely prejudicial use of the gangster idiom by the District Attorney in his summation (see *People v Petrucelli,* 44 AD2d 58, 59). To the same effect was the prosecuting attorney's reference to the defendant's testimony as a "con job" and to the defendant as a "liar". Such characterizations were held to be improper in *People v Shanis* (36 NY2d 697), and by this court in *People v Rogers* (59 AD2d 916). When, during his cross-examination, the defendant stated that he had not read his confession completely because "It was very difficult for me to read", the District Attorney then propounded the following question: "Q Sir, you are not telling us that you were under the influence of any drugs at this time, were you, when you signed the confession?" And when an objection to such question was overruled, the defendant answered: "A No, I was not." The objection to this question should have been sustained. Implicit in the question was the improper suggestion to the jury that the defendant was a drug user and, as such, to provide a possible motive for the crime. There was no proof in the record to suggest that the defendant used drugs at any time. In addition to the foregoing array of improprieties, the District Attorney, during his summation, made reference to a certain letter found in Funderburk's apartment addressed to the defendant. An objection to the introduction of this letter had been sustained earlier in the trial on the ground of remoteness, in that it was postmarked more than a year prior to its discovery. The District Attorney had no right to allude to matter not in evidence and to ask the jury to draw inferences from it (see *People v Wright,* 41 NY2d 172, 175; *People v Kennedy,* 59 AD2d 539; *People v Petrucelli, supra).* Even if it may be assumed, *arguendo,* that each of the

inappropriate actions by the District Attorney was not of the magnitude to warrant reversal, this court is impelled to conclude that the cumulative effect of his prejudicial conduct was to deprive the defendant of a fair trial (see *People v Shanis, supra; People v Conner,* 69 AD2d 908). We have considered the other issues raised by appellant and find that they lack merit. Damiani, Gibbons and Cohalan, JJ., concur; Hopkins, J. P., dissents and votes to affirm the judgment.