UNITED STATES of America ex rel. Frank Carlos COLON, Petitioner-Appellee,

v.

Richard DeROBERTIS, Warden, Respondent-Appellant.

No. 84–1904.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1985.

Decided Oct. 4, 1985.

Rehearing and Rehearing En Banc Denied Nov. 5, 1985.

Jack Donatelli, Asst. Atty. Gen., Chicago, Ill., for respondent-appellant.

Julicus L. Echeles, Chicago, Ill., for petitioner-appellee.

Before CUDAHY, Presiding Judge, ESCHBACH, Circuit Judge, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

Frank Carlos Colon, the petitioner in this habeas corpus proceeding, was convicted in 1977 of the murder of one Michael Rivera in a joint trial with codefendants in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois. His conviction was affirmed by the Appellate Court of Illinois. *People v. Colon,* 69 Ill.App.3d 1021, 26 Ill.Dec. 126, 387 N.E.2d 956 (2d District 1979).

Colon filed petition for a writ of habeas corpus in the U.S. District Court under the provisions of 28 U.S.C. Sections 2241, 2254 contending that the admission into evidence of the statement of a codefendant, Melvin Lopez, deprived him of the constitutional right of confrontation, guaranteed by the Sixth Amendment, contrary to the *Bruton* rule, established by the Supreme Court in 1968. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). This issue was unsuccessfully presented to the state trial and appellate courts, and the state concedes that Colon has exhausted his state remedies.

The district court granted Colon's petition for writ of habeas corpus, finding that the right of confrontation had been denied, and that this denial was not "harmless," because the constitutional error was "too significant for us to allow his murder conviction to stand." The State appeals.

In order to evaluate the issue before us on this appeal it is necessary to review at some length the circumstances leading to Colon's conviction:

Early in the morning of August 14, 1975, the body of Michael Rivera was discovered lying in a ditch in North Chicago, Illinois. A bicycle was found nearby. Death resulted from multiple stab wounds in the chest. The body was identified, and the police began a routine investigation, questioning the victim's relatives, friends and acquaintances. It was established that Rivera was last seen leaving his place of employment by bicycle shortly after midnight on August 14th.

On November 10, 1975, Officer Larry Russell of the Waukegan, Illinois police

* The Honorable Wesley E. Brown, Senior District Judge of the United States District Court for the District of Kansas sitting by designation.

department was called to St. Therese Hospital in that city where he was met by a Reverend Francisco Reyes, Colon's minister, who had been summoned to the emergency ward by Colon's parents.[1] Rev. Reyes advised Officer Russell that Colon wished to speak to the police. At trial, Officer Russell testified concerning the statement then given by Colon: (Vol. 11 Record, pp. 535–537).

"I asked Mr. Colon why he wanted to speak to the police. He stated he wanted to confess and I asked him what he wanted to confess to and he stated at that time, 'I killed Michael Rivera.'

\*   \*   \*   \*   \*   \*

"I told Mr. Colon that he didn't have to say anything more to me, that he had the right to not say anything more to me at all.

Mr. Colon stated he wanted to tell me, he wanted to get it off his conscience, that he wanted God to save his soul and he didn't think God would save him unless he turned himself in to the police.

\*   \*   \*   \*   \*   \*

"At that time he started relating the story to me that Michael Rivera owed him some money[2] and that he and a friend, who he would not name, went to North Chicago, they took the route that Rivera used to go home. He rode his bicycle to and from work.

"They waited along the route for him (Rivera) to get off of work. Mr. Rivera came by. They stopped him. They demanded their money from Michael Rivera. Rivera said he wasn't going to pay him because he didn't have to.

"They started fighting. Rivera and Colon started fighting. He stated that after they started fighting Rivera pulled

a half of a pair of scissors out of his belt and cut him across the back of the hand ... he said they continued to struggle, that he took the pair of scissors, half a pair of scissors away from Rivera and began stabbing him with it. He stabbed him numerous times. He didn't know why, he just kept stabbing him. ... I asked him then if his friend who was with him had a weapon and he said he did have a weapon. He didn't know what kind, but he didn't use it. He (the friend) did not stab Rivera with it. ... I asked him why he did at that time what he did. (Sic) He said he threw the scissors into the creek right next to the scene of the crime, that his friend drove him to a hospital in Chicago and had his hand stitched."

Through subsequent police investigation, it was determined that in addition to Colon, one Jose Ramos, and three brothers, Melvin, Benel, and Irving Lopez were involved in the attack upon Rivera. Colon, Melvin Lopez and Benel Lopez were tried together. Colon and Melvin Lopez were found guilty and Benel Lopez was acquitted. Charges were dismissed against Jose Ramos, and he testified against these three defendants. Irving Lopez, who was only 14 years of age at the time of the crime, was referred to juvenile court where he pled guilty to "consent of a homicidal death" and was sentenced to 5 years probation. 17 Rec. 132.

At trial none of the three defendants testified. The only direct evidence of their involvement consisted of Colon's statement to Officer Russell, a taped and transcribed statement given by Melvin Lopez, and the testimony of Jose Ramos.[3]

---

1. Colon had been taken to the hospital by his parents because he was on the floor at home, screaming, extremely agitated, saying he didn't want to live anymore, etc. Vol. 17 Record, pp. 116–119. Colon had told Rev. Reyes that he was involved in a crime. Rev. Reyes advised him he should tell the police in order to free his conscience. Colon agreed, and the police were called.

2. Colon told Officer Russell that Michael Rivera owed him $180 because of a drug deal. (Vol. 11 Record, p. 540).

3. A taped statement given by Benel Lopez was introduced into evidence for the sole purpose of showing motive. Vol. 11 Rec. 458. He stated that Michael Rivera owed him about $80 on account of a drug transaction.

The statement of Melvin Lopez is the basis for Colon's petition in habeas corpus. As summarized by the state Appellate Court, and incorporated into the Memorandum Opinion of the district court, the material portions of this statement were as follows:

"On November 12, 1975, Melvin Lopez, in the presence of his father and the Lake County State's Attorney gave a taped statement of the events surrounding Rivera's death. According to Melvin, he and his brothers, Benel and Irving, Jose Ramos and (Colon) met at Washington Park in Waukegan on the evening of August 13, 1975. (Colon) started the conversation by suggesting to Melvin that they get some money and that if Rivera didn't pay up, they should kill him; thereupon (Colon) produced some dismantled scissors. Neither Irving nor Benel wanted to have anything to do with it; nor did Melvin nor Ramos want to participate, but they went along so that (Colon) wouldn't get into trouble. All five went to North Chicago in (Colon's) car; the car was then parked under a viaduct; (Colon) got out of the car first. Michael Rivera rode by on his bicycle, and (Colon) asked him for money; Melvin then saw Rivera fall to the ground bleeding. Melvin got out of the car and told (Colon) to leave Rivera alone, but (Colon) insisted upon killing Rivera. At that point both (Colon) and Melvin began to stab Rivera each with half a pair of scissors, Melvin stabbing Rivera to prevent him from surviving the attack and getting (Colon) in trouble. According to Melvin neither Benel nor Irving Lopez nor Jose Ramos took part in the stabbing of Rivera, nor did he see any other weapons used. Melvin dragged Rivera's body into a ditch; he threw his half of the scissors out of the car on the way home; he didn't see what (Colon) did with his half of the scissors."

After Melvin's statement was played to the jury, the trial court gave this instruction:

"Ladies and Gentlemen of the Jury, the statement of Melvin Lopez which you just heard is to be considered by you as evidence only against Melvin Lopez and is not to be considered by you as evidence of guilt against Carlos Frank Colon."

With the testimony of Jose Ramos, the jury was given a third version of the attack upon Rivera. The state Appellate Court described the Ramos testimony in this manner:

"Jose Ramos testified that he had been indicted for the murder of Michael Rivera; but that the charges had been dismissed in exchange for his testimony for the state. According to Ramos, he, Melvin, Benel, and Irving Lopez and (Colon) drove to North Chicago in (Colon's) car. (Colon) stopped the car and stated that he would stop Rivera by pretending he had car trouble and instructed Benel, Irving and Ramos to wait in a tunnel until (Colon) called them; at that time Benel was holding a butcher knife, (Colon) and Melvin each a half of a pair of scissors, Irving a crowbar and Ramos a Phillips screwdriver which (Colon) had handed to him. While Ramos was in the tunnel he observed Rivera ride by on a bicycle and then pass from view. Benel and Irving left the tunnel; after waiting a while Ramos returned to (Colon's) car. He observed Rivera against the wall in a crouched position bleeding; (Colon) was holding his own hands which were bleeding and stated that Benel had accidently stabbed him.... According to Ramos, Rivera said, 'Benel, this ain't right what you're doing. Frank, think about it. You're fucking up. You're fucking up.' Irving then asked if Rivera had the money right now, and Rivera replied that he didn't but that he could get it. (Colon) said, 'No, no, forget it,' and Benel Lopez said, 'Wait a minute, wait a minute, Frank ...' and went to hold (Colon) back. (Colon) slugged Benel and stabbed Rivera in the stomach with half of a pair of scissors. Ramos saw (Colon) pull away and Irving and Melvin start to stab Rivera. Ramos got back inside (Colon's) car where he was joined by Benel and (Colon)

and then Melvin and Irving. The group then returned to Benel Lopez' house." 26 Ill.Dec. at 128–129, 387 N.E.2d at 958–959.

Ramos was, of course, subject to cross-examination. He admitted giving prior inconsistent statements concerning his activities and where and when the various weapons first appeared. In particular, as noted by the district court, he had not told the Lake County State's Attorney that Colon had brought with him a half-pair of scissors to the scene of the stabbing.

The state trial court instructed the jury on the theory of self-defense, stating that the jury could not find Colon guilty of murder unless it believed beyond a reasonable doubt that Colon "was not justified in using the force which he used."

The jury was also advised that it could find Colon guilty of voluntary manslaughter, as opposed to murder, if it found that at the time of the killing (Colon) was "acting under a sudden and intense passion resulting from serious provocation by (Rivera) . . .," or if "at the time of the killing (Colon) believes the circumstances to be such that, if they existed, would justify or exonerate the killing . . ., but his belief is unreasonable." The jury was further instructed according to state statute that "serious provocation" was "conduct sufficient to excite an intense passion in a reasonable person."[4]

The Illinois Appellate Court found that the inculpatory statement made by Colon to Officer Russell at the hospital was so substantially similar to that of Lopez that, under applicable state law, any prejudice to the defendant Colon was minimal, and harmless. In the appeal to our Court the State contends that Colon's situation involves an exception to the *Bruton* rule, and that, even if it does not, any error was harmless.

In *United States v. Spinks*, 470 F.2d 64 (7th Cir.1972) *cert. denied*, 409 U.S. 1011, 93 S.Ct. 456, 34 L.Ed.2d 305 (1972), this Circuit held that the fact that a codefend-

ant did not take the stand did not deprive defendant of the right of confrontation, when the codefendant and the defendant had given "substantially similar" confessions:

> "In the case before us, . . . both Spinks and Turner gave substantially similar confessions. We think that 'where the jury has heard not only a codefendant's confession but the defendant's own confession, no such "devastating" risk attends the lack of confrontation as was thought to be involved in *Bruton*.' (citations omitted).

\* \* \* \* \* \*

> "There is no merit in Spinks' claim that he was prejudiced by denial of the right to cross-examine Turner. It would be ludicrous to have Spinks trying to break down Turner's confession which implicated Spinks, while Spinks' own confession remained unchallenged. And even if Turner's confession had been excluded from evidence—or even if Spinks' motion for severance had been granted—Spinks would still be faced with his own confession." (470 F.2d at 66).

In addition, the *Spinks'* Court held that even if error was committed, it was harmless beyond a reasonable doubt because of Spinks' own confession and "other evidence of his guilt". This "other evidence" included identification at trial by both a bank teller and a guard who had been disarmed, as well as the fact that at the time of his arrest, Spinks "was found hiding in a cubbyhole in an apartment containing $17,488 in cash, bait bills from the teller's window, and the confiscated weapon of the guard." 470 F.2d at 66.

In order to determine the issue of prejudice and error, the inculpatory statements of Lopez and Colon must be examined in full in order to discern if they were "substantially similar on critical points." *United States v. Flemming*, 594 F.2d 598, 604 (7th Cir.1979), *cert. denied*, 442 U.S. 931, 89 S.Ct. 2863, 61 L.Ed.2d 299 (1979).

---

**4.** These instructions were given pursuant to state statutory definitions.

As set out above, it is obvious that the statements in question are *not* substantially similar on critical points. As was pointed out by the trial court, Colon never denied that he stabbed Michael Rivera—the factual question submitted to the jury was whether or not Colon acted in self defense, or whether he committed voluntary manslaughter as opposed to murder. The court below pointed out the critical difference in the two statements in these words:

> "Petitioner (Colon) stated that Rivera brought the half-pair of scissors to the scene of the stabbing, and that Rivera was the first to use the weapon during his fight with Petitioner, cutting Petitioner across the back of his hand. Petitioner claimed that he then took the half-pair of scissors away from Rivera and stabbed Rivera with it several times. Melvin Lopez, on the other hand, stated that Petitioner and not Rivera, brought the half-pair of scissors to the scene of the stabbing, and that the only provocation for Petitioner's stabbing of Rivera was Rivera's refusal to give Petitioner any money."

In addition to finding that Colon's rights under the Confrontation Clause had been violated at trial, the district court further determined that such error was not harmless beyond a reasonable doubt, within the meaning of *Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 1058, 31 L.Ed.2d 340, 344 (1972).[5]

After reviewing the entire trial transcript we find that the district court correctly concluded that the direct evidence against Colon consisted only of the statement made to Officer Russell, and the testimony of Jose Ramos. Other evidence, such as witnesses who identified a car similar to that used by Colon's group as being at the scene of the crime, or evidence that blood found at the scene was of a type similar to that of Colon, or that Rivera owed money to Benel Lopez, and/or Colon, was consistent with, and corroborative of Colon's own statement. Ramos testified that he was in the tunnel and did not see the beginning of the fight between Rivera and Colon, and that when he saw Colon he noted that his hands were bleeding, a circumstance which is entirely consistent with Colon's statement. Ramos was effectively cross-examined and admitted that the murder charge against him had been dismissed in exchange for his testimony. The district court noted that his statement that Colon had brought the half pair of scissors to the scene was "effectively impeached on cross-examination." In addition, a witness called on behalf of Colon, Frank Martinez, testified that he had not seen Colon carrying scissors at the park, contrary to the testimony of Ramos.

Under all of these circumstances, we conclude, as did the trial court, that the admission of the statement of Melvin Lopez, without opportunity for Colon to cross-examine Lopez, was not harmless error because it can not be said that there was no "reasonable possibility" that the Lopez statement contributed to Colon's conviction of murder.[6]

The judgment of the District Court is AFFIRMED.

---

**5.** In *Schneble* the test is stated as being whether or not "the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." 405 U.S. at 430, 92 S.Ct. at 1059, 31 L.Ed.2d at 344.

**6.** We note that the prosecutor extensively relied on the Lopez statement in closing arguments to the jury.