FILED
04/07/2022
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 5, 2022 Session

**KRISTINA COLE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 17-01568      J. Robert Carter, Jr., Judge**

———————————————————

**No. W2020-01607-CCA-R3-PC**

———————————————————

Petitioner, Kristina Cole, appeals the denial of her post-conviction petition arguing that the post-conviction court erred in its denial of her petition. Following our review of the entire record and the briefs of the parties, we reverse the judgment of the post-conviction court and remand this case for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and J. ROSS DYER, JJ., joined.

Ben Israel, Memphis, Tennessee, for the appellant, Kristina Cole.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Petitioner was charged with two counts of conspiracy to possess 300 grams or more of methamphetamine with the intent to sell or deliver in a drug-free zone (Counts 1 and 2), and two counts of possession of 300 grams or more of methamphetamine with intent to sell or deliver in a drug-free zone (Counts 3 and 4). Following a jury trial, Petitioner was convicted of all four counts in the indictment and was sentenced to thirteen and one-half years on Counts 1 and 2, and thirteen and one-half years on Counts 3 and 4, to run concurrently with her sentence in Counts 1 and 2, for a total effective sentence of thirteen and one-half years in confinement. The trial court merged the convictions in Counts 1 and 2, and merged the convictions in Counts 3 and 4. On appeal, this court affirmed the

judgments, holding that the evidence was sufficient to uphold Petitioner's convictions and that the trial court did not err in admitting text messages between Petitioner and her co-defendants. *State v. Kristina Cole*, No. W2017-01980-CCA-R3-CD, 2018 WL 5810011, at *20 (Tenn. Crim. App., Nov. 5, 2018) *perm. app. denied* (Mar. 28, 2019). Petitioner filed an application for permission to appeal to the Tennessee Supreme Court which was denied.

*Trial*

This court's opinion on direct appeal summarized the facts at trial as follows:

On March 30, 2017, the Shelby County Grand Jury indicted Defendant Cole on the following charges:

| Count | Offense | Offense Classification |
|-------|---------|------------------------|
| One | Conspiracy to possess 300 grams or more of methamphetamine with intent to sell in a drug-free zone | Class B |
| Two | Conspiracy to possess 300 grams or more of methamphetamine with intent to deliver in a drug-free zone | Class B |
| Three | Possession of 300 grams or more of methamphetamine with intent to sell in a drug-free zone | Class A |
| Four | Possession of 300 grams or more of methamphetamine with intent to deliver in a drug-free zone | Class A |

. . .

At trial, Detective Mark Gaia testified that he worked for the Bartlett Police Department ("BPD"). Around February 2, 2016, Detective Gaia received a phone call from a detective in Visalia, California, regarding a package that had been shipped from California to an address in Bartlett that contained methamphetamine. The package was addressed to "Bailey Green" and listed 2552 Linwood as the

address.[1]  After the BPD received the package from the California detective, officers weighed the package and tested the contents for illegal drugs.  Detective Gaia testified that the package contained a bag of children's clothing and one pound of methamphetamine.  He explained that a pound of methamphetamine would be worth $12,000 to $15,000.

Detective Gaia obtained a warrant to search for narcotics, and Detective Jeffrey Swindol conducted a controlled delivery of the package to Defendant Cole's residence at 2552 Jenwood.  After Defendant Cole accepted the package, Detective Gaia knocked on the door of her residence, and Defendant Cole let him inside.  Once inside, Detective Gaia observed the package inside the house. Defendant Cole gave him permission to search the residence. During the search, Detective Robert Christian found a photograph on the nightstand in Defendant Cole's bedroom that depicted a man wearing a prison uniform.  When Detective Gaia asked Defendant Cole about the photograph, she stated that it was her ex-boyfriend, "Timothy Smith," whose birthday was March 11.  Detective Gaia confirmed that the individual in the photograph was Jason White based on "numerous handwritten letters that were addressed to Kristina Cole from [Jason White] at the Riverbend Maximum Institution near Nashville."

Detective Gaia collected three cell phones from Defendant Cole: a Verizon HTC phone, a Samsung phone, and an LG phone.  He also found a laptop computer.  He observed that Defendant Cole had recently tracked a package on the FedEx website from the search history of the computer.  The tracking number of the package that Defendant Cole tracked electronically matched the number of the package that the BPD delivered to Defendant Cole's residence. Defendant Cole denied knowing anyone named Bailey or knowing the contents of the package.  Detective Gaia identified evidence of several forms of communication between Defendant Cole and Defendant White, including a handwritten letter from White to Cole. Detective Gaia also found a receipt for a money order to "Jason White," which listed his inmate booking number, and a receipt for a purchase by Defendant Cole to Defendant White through Union

---

[1] Detective Gaia determined that there was not a valid address of 2552 Linwood in Shelby County.  He learned that the correct address was 2552 Jenwood.  (Footnotes in original)

Supply Direct, Inmate Direct Sales. Detective Gaia observed several PayPal and MoneyPak cards in Defendant Cole's residence.

While Detective Gaia was discussing the contents of the computer with Defendant Cole, the LG cell phone continuously rang. The caller was listed in Defendant Cole's phone as "Line Boo Other[.]" When Detective Gaia picked up the phone and hit the answer button, Defendant Cole stated that she wanted an attorney. After Detective Gaia placed Defendant Cole under arrest, Dustin White[2] pulled into the driveway of Defendant Cole's residence. As he spoke with Mr. White, Detective Gaia noticed that the same phone number that called Defendant Cole's phone was also continuously calling Mr. White's phone. Detective Gaia noted that Mr. White was the brother of Defendant White and that the phone number that called Mr. White's phone was listed as "J." Detective Gaia stated that Defendant Cole's residence was located "in very close proximity to a school." Detective Gaia identified a Google Earth picture that showed that Defendant Cole's residence was approximately 200.62 feet away from Raleigh-Bartlett Meadows Elementary School.[3]

Detective Gaia testified that he listened to the recordings of Defendant Cole's outgoing calls while she was incarcerated.[4] During one call, Detective Gaia identified the voice of Defendant Cole's daughter, Desiree Cole, who connected Defendant Cole with a third party, Kimberly White, Defendant White's mother. Ms. White then connected the call to Defendant White's phone via speaker phone. Detective Gaia identified nineteen phone calls where Defendant White was part of the conversation with Defendant Cole.

On Defendant Cole's HTC cell phone, Detective Gaia observed that Defendant Cole sent a photograph of herself to (731) 693-6346.

---

[2] Detective Gaia refers to this individual as "Dustin Van White." However, this individual is referred to as "Dustin White" in the remainder of the transcripts. For purposes of clarity, we will refer to him as Mr. White. (Footnote in original)

[3] Sergeant Terrence Riley also testified that Defendant Cole's residence at 2552 Jenwood was located within 1,000 feet of Raleigh-Bartlett Meadows Elementary School.

[4] Detective Michael Harber of the Shelby County Sheriff's Office explained that inmates used personal identification numbers when placing a call at the jail. Detective Harber identified a recording of phone calls that Defendant Cole made while she was incarcerated, and a CD containing the phone calls was admitted as an exhibit at trial. However, the CD of Defendant Cole's jail phone calls included in the appellate record was not functional.

Defendant Cole also received a photograph of Defendant White from (901) 573-4218. The photograph message was signed "Da Junk Yard." Detective Gaia noted that the photograph of Defendant White appeared to have been taken in a jail cell. Detective Gaia also examined the contact list and text messages on Defendant Cole's HTC cell phone. He observed that the contact number for "Jason White" and "Boo" were the same—(731) 217-2745. He also noted that the contact number for "New Boobear" was (731) 694-7388.

When Detective Gaia examined Defendant Cole's Samsung cell phone, he observed text message exchanges with (731) 694-9127. This phone number used a signature of "COUNTRY CRAZY[.]"[5] Defendant Cole texted the following message to this number: "Hey baby. This is my other number. Lock me in. Love I [sic] baby . . .[]" Throughout Defendant Cole's numerous text message exchanges with this phone number, she frequently referred to the recipient as "BooBear." Defendant Cole also referred to the recipient of messages to (731) 499-3517 as "BooBear." This phone number used "L.L.K.N J.Y.D." as its signature, and Defendant Cole had saved this number in her contact list as "New BooBear." On January 28, 2016, Defendant Cole sent the following message to "New BooBear": "$125 – 890 884 6154[.]" Detective Gaia stated that Defendant Cole was informing Defendant White that she loaded $125 into account number 890-884-6154. Detective Gaia also discovered contacts in Defendant Cole's Samsung cell phone named "BooBear Other Line[,]" connected to (731) 394-1929 and "BooBear Second[,]" connected to (615) 917-3749.

Detective Gaia also examined Defendant Cole's LG cell phone and found a photograph of Defendant White that was sent from (731) 693-2611. The sender of the photograph used the following signature: "Da Junk Yard." Defendant Cole sent messages to this phone number and referred to the recipient as "BooBear." Defendant Cole also exchanged text messages with (731) 443-6670, and again, she referred to the recipient of her messages as "BooBear." In May 2015, Defendant Cole texted (615) 564-0303 on her messages as "BooBear." The recipient used the following signatures: "$SAME N***A SINCE DAY1$" or "$Loyalty Bring

---

[5] Many phones have the ability to automatically add a signature of the user's choosing to the end of every text message.

Royalty$[.]" In July 2015, Defendant Cole began exchanging text messages with (731) 694-9127, and she referred to the recipient as "BooBear." The recipient used the signature of "COUNTRY CRAZY[.]" Starting in September 2015, Defendant Cole began exchanging text messages with an unidentified contact at (901) 661-9076.[6] Defendant Cole and the recipient discussed loading various amounts of money on prepaid credit/debit cards. For example, Defendant Cole received the following message from "Eastwood": "$40.#7287013535. $500.#723-035-8681[.]" Defendant Cole also exchanged text messages with contacts identified as "New BooBear" connected with (731) 499-3517 and "Line Boo Other" connected with (615) 917-3749. Defendant Cole sent the following text messages to "Line Boo Other" on January 27, 2016: "Sender: Kristina Cole, Memphis TN Control #864-588-3690, $100" and "$75 - 756 663 9348 $30 - 748 829 1871[.]" On February 3, 2016, Defendant Cole sent the following text messages to "Line Boo Other": "Package arrived"; "They put the wrong street name. Lucky they knew what it was suppose[d] to be"; and "What do you want me to do with it?"[7]

On cross-examination, Detective Gaia clarified that the managers at the California FedEx facility opened the package because they suspected that it contained contraband. A detective in California then contacted the SCSO regarding the package. Detective Gaia agreed that the text message exchanges between Defendant Cole and Co-defendant White were not illegal on their face. He also agreed that transferring money into a PayPal account or using a prepaid credit/debit card was not illegal. Detective Gaia agreed that Defendant Cole had no criminal record prior to the current offenses. He stated that Defendant White used at least ten different phone numbers to communicate with Defendant Cole. Detective Gaia could not confirm that Defendant White had exclusive control of the phone numbers.

---

[6] This phone number was later identified as "Eastwood" in Defendant Cole's contact list in her LG phone.

[7] On cross-examination, Detective Gaia stated that he sent this final text message to "Line Boo Other." He explained that he sent the text message because he was attempting to arrange for the owner of the package to pick it up.

Special Agent Peter Hall testified that he worked for the TBI as a forensic chemist. After the trial court declared Special Agent Hall to be an expert, he stated that the package delivered to Defendant Cole's residence contained 441.17 grams of methamphetamine, a Schedule II controlled substance.

Detective Christian testified that he worked in the Investigative Services Narcotics Unit of the BPD. On February 3, 2016, Detective Christian assisted Detective Gaia with executing the search warrant on Defendant Cole's residence at 2552 Jenwood. Detective Christian found a photograph of Defendant White on Defendant Cole's nightstand. On February 22, 2017, Detective Christian interviewed Defendant Mullins. Detective Christian stated that he did not believe Defendant Mullins was completed truthful during the interview because Defendant Mullins said "honestly" and "I swear to God" frequently.

During his interview with Detective Christian, Defendant Mullins stated that, at the end of January 2016, he was incarcerated at the "Northeast penitentiary" when another inmate, "Angel," approached him and offered to pay him $600 if Defendant Mullins provided him with a mailing address in Memphis. Angel informed Defendant Mullins that the package would contain "ice," or crystal methamphetamine. Defendant Mullins contacted Defendant Cole and asked if he could send a package with a gift of jewelry for his mother to her address. Defendant Cole agreed, and Defendant Mullins gave her address to Angel. Angel then gave Defendant Mullins $300 through PayPal and promised to give him an additional $300 after the package was delivered. Angel later provided Defendant Mullins with a tracking number for the package, which Defendant Mullins gave to Defendant Cole. A few days later, Defendant Mullins received a text message informing him that the package arrived, despite the fact that the package listed the wrong address. Defendant Mullins informed Angel that the package arrived and attempted to call Defendant Cole. After he was unable to reach Defendant Cole, Defendant Mullins called Defendant Cole's "husband," Defendant White. Defendant Mullins later learned that Defendant Cole had been arrested and charged for her role in the current offenses.

Defendant Mullins asserted that Defendant Cole was unaware that the package contained methamphetamine. Defendant Mullins explained that he met Defendant Cole through Defendant White. Defendant Mullins met Defendant White while they were incarcerated in Morgan County in 2012. He also stated that Defendant Cole called Defendant Mullins "Boo Bear." He said that he did not have a romantic relationship with Defendant Cole.

Investigator Andrew Brown testified that he worked for the Tennessee Department of Correction as an investigator in the Office of Investigation and Complaints. Investigator Brown met Defendant White while Defendant White was incarcerated at the Riverbend Maximum Security Institution. On February 3, 2016, Investigator Brown received a phone call from Detective Gaia about Defendant White. Based on his conversation with Detective Gaia, Investigator Brown confiscated a cell phone charger but was unable to retrieve the cell phone. Investigator Brown stated that one of the signatures that Defendant White used to communicate with Defendant Cole, LLKN JYD, meant "Long Live King Neal Junk Yard Dog[.]" "Long Live King Neal" referred to Neal Wallace, the founder of the Traveling Vice Lords gang. "Junk Yard Dog" referred to a faction of the Traveling Vice Lords that was organized by Charles Thompson, also known as "County." Investigator Brown testified that there was no legitimate reason for an inmate to need a PayPal or Green Dot account. He explained that inmates could receive financial help from friends and family members through JPay, but inmates did not need a non-authorized cell phone to receive funds through JPay and non-inmates could send money through JPay with a computer or smart phone. In Investigator Brown's experience, inmates used PayPal or Green Dot accounts to purchase contraband items such as tobacco products, narcotics, cell phones, or homemade weapons. He acknowledged that he did not know what the specific transactions noted on Defendant Cole's phone were for.

Defendant Cole, Defendant White, and Defendant Mullins decided not to testify. The jury found Defendant Cole guilty of conspiracy to possess methamphetamine with the intent to sell in a drug-free zone in count one, conspiracy to possess methamphetamine with the intent to deliver in a drug-free zone in count two, facilitation of possession of methamphetamine with the intent to sell in a drug-free

- 8 -

zone in count three, and possession of methamphetamine with the intent to deliver in a drug-free zone in count four.

. . .

The trial court sentenced Defendant Cole to thirteen and one-half years with release eligibility after service of 100% of the sentence in counts one and two. Additionally, the trial court merged the convictions in counts one and two. The trial court also merged counts three and four and sentenced Defendant Cole to thirteen and one-half years with release eligibility after service of 100% of the sentence in those counts. The trial court ordered Defendant Cole's sentences in counts one and two to be served concurrently to her sentences in counts three and four, for a total effective sentence of thirteen and one-half years in the Tennessee Department of Correction.

*State v. Kristina Cole and Montez Mullins*, No W2017-01980-CCA-R3-CD, 2018 WL 5810011 at *1 (Tenn. Crim. App., Nov. 5, 2018) (footnotes in original). Petitioner filed her timely petition for post-conviction relief on July 29, 2019. In an amended petition filed by counsel, Petitioner asserts that trial counsel was ineffective for the following reasons: (1) failure to file critical motions including a motion to suppress evidence obtained from a search warrant, a motion to suppress text messages from a cell phone obtained from the search, and a *Bruton*[8] motion regarding a co-defendant's statement; (2) failure to object to inadmissible evidence at trial including hearsay testimony about the package in question, the admissibility of a photograph of Petitioner's computer search history, the admission of text messages, and admission of a Tennessee Bureau of Investigations report on the contents of the package;[9] and (3) failure to object to the State's closing arguments when the State violated Petitioner's Fifth Amendment rights by commenting on Petitioner's silence at trial and when the State testified during arguments.

*Post-Conviction Hearing*

Trial counsel testified that she was the third attorney retained to represent Petitioner in the instant case. Trial counsel explained that she did not file a *Bruton* motion regarding Petitioner's co-defendant's statement because although she believed the statement to be "a little farfetched," Petitioner "maintained that she believed that [the statement] was going

---

[8] *Bruton v. United States*, 391 U.S. 123 (1968).

[9] In an amended petition, Petitioner withdrew the claim regarding the admission of the TBI report, conceding that it was properly admitted.

to be something that would help exonerate her" and "was insistent that [the] statement was going to be beneficial to her." Trial counsel admitted that she thought the statement was "a little farfetched" and that she told the Petitioner that there was a "possibility that if the jury didn't believe it that it might backfire." However, Petitioner "wanted the statement to come in." Upon further questioning by Petitioner's post-conviction counsel, trial counsel reiterated that she had discussed with Petitioner that the statement could be excluded, but explained that Petitioner "was insistent that Mr. Mullins' statement was going to be beneficial to her and so I went with it."

Trial counsel testified that after having examined all of the text messages from Petitioner's phone produced in discovery, she did not believe that she could have successfully excluded them even if she had objected to their admission. Thus, she strategized that by admitting all of the text messages, the jury would be inundated with information, and they would not be able to go through "every single one of those text messages." Specifically regarding the text messages concerning the arrival of the package, trial counsel testified that other evidence established that Petitioner was aware that a package was going to be delivered to her. Specifically, trial counsel testified that Petitioner admitted that there was a package, that she knew that the package was coming, and that she had tracked the package. Based on Petitioner's admissions and the evidence, trial counsel could not argue that Petitioner did not know the package was coming, but instead argued that Petitioner believed the contents of the package to be "jewelry and something for [co-defendant]'s mother or girlfriend or something like that and [Petitioner] had no knowledge as to what was actually in the package." Based on that theory, trial counsel testified that she did not think Petitioner's knowledge of the package was detrimental information.

When questioned about text messages Detective Gaia may have sent from Petitioner's phone, trial counsel testified that there was no way for her to establish that Detective Gaia had possession of Petitioner's phone and that he was able to send text messages from her phone prior to his entrance into the house. Trial counsel explained that the timeframe between the execution of the search warrant and when the texts were sent was a matter of a few minutes. Therefore, trial counsel believed that the State had established that Petitioner sent the texts, and trial counsel did not see an ethical way to refute this contention based on the evidence. Trial counsel also testified that she did not consider attempting to exclude the screenshots of Petitioner's search history. Petitioner admitted to trial counsel that she had searched the tracking number for the package she was expecting, and trial counsel did not think there was a basis to exclude the photos of Petitioner's search history. Further, since the trial strategy was to admit that Petitioner was expecting a package containing jewelry, trial counsel did not find the "fact that someone tracks their packages . . . to be detrimental to their case at all."

- 10 -

Trial counsel testified that she did not consider objecting to Officer Gaia's testimony that during the search, Petitioner stated that she wanted her lawyer. Trial counsel explained that it was Petitioner's position that the officers were in her house and were treating her "unfairly;" therefore, trial counsel did not think the statement was incriminating or damaging. Trial counsel discussed the statement with Petitioner and testified that Petitioner did not express that she thought the statement was inculpatory or that she wanted it excluded.

When questioned about why she did not object during the State's closing arguments, trial counsel testified that she did not consider objecting to the prosecutor's statements during the State's closing argument because she does not object during closing arguments since "it's not testimony." The State argued that "no one got up on the stand to testif[y] about the version of events that [co-defendant] had suggested." Trial counsel explained that the jury was instructed "that they are not to put any weight on the fact that none of the defendants testified. And that the fact that they did not testify does not in any way impute upon them an admission of guilt or anything of that nature." Trial counsel believed the trial court's instruction was sufficient, and she did not believe that the prosecutor's comment was egregious enough to have objected since the prosecutor "did not specifically say [Petitioner]. There were three other defendants up there. He did not specifically indicate [Petitioner's] silence." The statement was not egregious to the point she thought she needed to object. Trial counsel testified that she also relied on the trial court's instruction regarding "closing arguments not being testimony" in her decision not to object to the prosecutor's statements. Trial counsel was not asked about any other instances of alleged improper closing argument.

The State did not cross-examine trial counsel. The post-conviction court asked trial counsel some questions about her experience. Trial counsel testified that she had been practicing law for nine years at the time of the post-conviction hearing and estimated that eighty-five percent of her practice was in criminal defense. Prior to Petitioner's trial, trial counsel had criminal trial experience in Jackson, Madison County and in Lexington, Henderson County.

Detective Mark Gaia testified that he handled Petitioner's case in his capacity as a detective for the Bartlett Police Department. Detective Gaia explained that Petitioner's address was in Memphis, Tennessee but that the search warrant was executed by the Bartlett police. Detective Gaia testified that he determined that the address on Jenwood was the address to be searched after speaking to detectives from California who explained that the airway bill was "miskeyed." Detective Gaia obtained a photocopy of the handwritten airway bill from the detectives in California and testified that the way it was addressed could be read as either "Linwood" or "Jenwood" and there was no 2552 Linwood in Memphis.

Detective Gaia testified that his report offered only an approximation of the timeframe in which the search of Petitioner's home occurred and that the recording equipment that was used to document the search did not have a timestamp. According to Detective Gaia, the search was executed approximately ten minutes after the package was delivered. Detective Gaia estimated that between fifteen and forty-five minutes passed between the execution of the search and Petitioner's arrest. Detective Gaia did not know what time Petitioner's phone was confiscated but testified that it was after she was arrested. Detective Gaia briefly explained that he obtained Petitioner's search history from her computer by pressing the letter "F" on the keyboard. The State did not cross-examine Detective Gaia.

The post-conviction court concluded that trial counsel did not render deficient performance. The post-conviction court based its conclusion on its finding that trial counsel's strategy and decisions were based upon Petitioner's decision as to what the defense would be. The post-conviction court's written order denying relief was filed on November 6, 2020. This timely appeal followed.

**Analysis**

When determining the merits of a post-conviction petition, the Post-Conviction Procedure Act requires the post-conviction court to make written findings of fact and conclusions of law. *Steven Tyler Nabi v. State*, No. M2017-00041-CCA-R3-PC, 2018 WL 1721869 at *5 (Tenn. Crim. App., April 9, 2018) (reversing where the record is devoid of factual findings by the post-conviction court pertinent to issues raised on appeal). A trial court's final disposition of a petition for post-conviction relief "shall set forth in the order or a written memorandum of the case all grounds presented, and shall state the findings of fact and conclusions of law with regard to **each such ground.**" *Id.* (emphasis in original) (citing T.C.A. § 40-30-111(b)). The use of the word "shall" clearly indicates the Tennessee General Assembly intended that the duty of the post-conviction court to make findings of fact is mandatory. *Id.* (citing *Donald Mays v. State*, No. W2003-02761-CCA-R3-PC, 2004 WL 2439255, at *6 (Tenn. Crim. App., Oct. 28, 2004) (remanding whether the post-conviction court failed to address the issue of whether counsel were ineffective by failing to challenge the trial court's failure to charge the jury on certain lesser-included offenses). Not only do the post-conviction court's findings of fact facilitate appellate review but, in many cases, are necessary for such review. *Id.* Where the post-conviction court fails to make "a clear and detailed finding of fact," either orally or on the record, the appellate court is "at a complete loss to know the basis of the trial judge's decision and judgment; assignments of error and appellate review are seriously frustrated if not completely thwarted by lack of a definitive finding of fact by the trial judge." *Brown v. State*, 445 S.W.2d 669, 671 (Tenn. Crim. App. 1969).

In the case before us, the record is devoid of several findings of fact and conclusions of law critical to our review. The post-conviction court's order denying relief did not make factual findings as to the following issues: (1) whether trial counsel was deficient in failing to file critical motions including a motion to suppress evidence obtained from a search warrant, a motion to suppress text messages from a cell phone obtained from the search, and a *Bruton* motion regarding a co-defendant's statement; (2) whether trial counsel was deficient in failing to object to inadmissible evidence at trial including hearsay testimony about the package in question, the admissibility of a photograph of Petition's computer search history, the admission of text messages, and the admission of a Tennessee Bureau of Investigations report on the contents of the package; and (3) whether trial counsel was deficient in failing to object to improper testimony and commentary on Petitioner's silence, implicating her Fifth Amendment rights, during the State's closing arguments. We also note that the post-conviction court did not make credibility determinations.

A mere recitation or summary of the testimony of the witnesses at a hearing is not a "finding of fact" as is required. *Steven Tyler Nabi*, 2018 WL 1721869 at *6. A "finding of fact" is the post-conviction court's opportunity to fulfill its responsibility to sort through all the evidence and set forth what actually happened, as opposed to just each witness's version of what happened. *See Charles Bradford Stewart v. State*, No. M2015-02449-CCA-R3-PC, 2017 WL 2645651, at *14 (Tenn. Crim. App., June 20, 2017) (post-conviction court's order explicitly sets out the factual findings and conclusions of law in an enumerated list).

Without sufficient factual findings and conclusions of law, we are unable to properly address the merits of Petitioner's claims. *See, e.g., Casey Colbert v. State*, No. W2019-00383-CCA-R3-PC, 2020 WL 2394141, at *16 (Tenn. Crim. App., May 12, 2020) (reaching a similar conclusion).

**Conclusion**

Accordingly, we reverse the judgment of the post-conviction court and remand for further proceedings consistent with this opinion. After an order is entered in compliance with the requirements of the post-conviction statutes and this opinion, the losing party shall be entitled to initiate an appeal in accordance with the Tennessee Rules of Appellate Procedure.

_____
JILL BARTEE AYERS, JUDGE

- 13 -